**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Hugh KILPATRICK and Carl Kenneth
Barker, Defendants-Appellants.**

**Nos. 18436, 18437.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 14, 1972.

Decided April 10, 1972.

---

Robert S. Bailey, Chicago, Ill., for defendants-appellants.

James R. Thompson, U. S. Atty., William T. Huyck, Asst. U. S. Atty., Chicago, Ill., William J. Bauer, U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., of counsel.

Before HASTINGS, Senior Circuit Judge, KILEY, Circuit Judge, and GORDON, District Judge.*

GORDON, District Judge.

The appellants Kilpatrick and Barker were each found guilty by the jury under the conspiracy count and three substantive counts under an indictment which charged them and thirteen others with violating certain laws of the United States relating to counterfeit money. In addition to the conspiracy count (count 1), Kilpatrick was convicted under counts 2, 5 and 11, and Barker was convicted under counts 8, 20, and 21.

Both Kilpatrick and Barker appeal their convictions, and three principal issues are advanced. First, the defendants urge that the evidence does not establish a single conspiracy but, instead, shows a series of unrelated transactions. Secondly, it is contended that it was improper to have admitted certain rebuttal testimony offered by the government. A third issue, advanced on behalf of Kilpatrick, is the claim that venue was in-correctly laid in the district court for the northern district of Illinois.

Both defendants were sentenced to five-year terms on the conspiracy count and to seven-year terms on each of the substantive counts, with all sentences to run concurrently.

The testimony in this case ran over a thousand pages, and our brief summary of it is principally designed to reflect some of the ways in which Kilpatrick and Barker were involved. Starting in the spring of 1967, Roy Morgan, who had access to counterfeit money in Alabama, offered to supply such money to the defendant Kilpatrick and Billy Lovell. Morgan claimed that at first Kilpatrick rejected the proposal, but when the offer was repeated, it was accepted. Don Baggett, Lovell's brother-in-law, testified that Lovell and Kilpatrick exhibited a counterfeit twenty dollar bill to him in Georgia in March, 1967; subsequently, on March 29, 1967, Baggett received $500.00 in counterfeit twenty dollar bills from Kilpatrick in Alabama.

Baggett then displayed the counterfeit twenty dollar bills to Connis Dukes in Chicago. A little later, Lovell, Baggett and Dukes drove to Alabama where the latter two persons paid $1200.00 for approximately $8,000.00 in counterfeit twenties, which were supplied by Lovell and Kilpatrick. Then Kilpatrick borrowed a 1965 Plymouth and drove Baggett and Dukes from Alabama to Chicago.

In May, 1967, Baggett first showed one of the counterfeit twenty dollar bills to Barker, who is the brother-in-law of Dukes. After making a trip to Nashville, Tennessee, Baggett returned to Chicago and sold $10,000.00 worth of the counterfeit twenty dollar bills to Barker for $2000.00.

In early June, 1967, Baggett again went to Nashville and this time was met by Kilpatrick and Lovell, who sold $80,000.00 worth of counterfeit bills to Baggett and Boris Mitcheff for an

---

* District Judge Myron L. Gordon of the Eastern District of Wisconsin is sitting by designation.

agreed purchase price of $4000.00. In July, 1967, Lovell came to Chicago with $60,000.00 worth of ten dollar counterfeit money which was sold to Baggett for 5% of the face value.

Baggett testified that he made four sales of counterfeit money, totalling $50,000.00, to Barker in the spring and summer of 1967. In addition to such purchases from Baggett, Barker negotiated with Lovell and Morgan about the purchase of counterfeit money. Morgan testified that he met Barker with Lovell in Cicero, Illinois, but no sale was consummated because Barker would not agree to the price that was proposed.

## I. CONSPIRACY

The appellants urge that the evidence shows a "series of similar but unrelated dealings." Taken as a whole, however, we believe that the testimony was sufficient to establish the existence of a unitary conspiracy. There was ample evidence presented from which the trier of fact could conclude that this was not a disconnected series of independent transactions, but rather was a unified project in which Kilpatrick and Barker not only played significant roles, but also were aware of the activities of the other affiliated participants.

Upon the evidence presented, the jurors could properly believe that Kilpatrick and Barker had knowledge of the interlocking alliances which were employed in carrying out the counterfeit money distribution scheme. With Baggett as the connecting link, the roles of the various participants were tied together. It may not be said that the roles of Kilpatrick and Barker were isolated, minimal, or episodic. The events took place within a relatively limited period of time. In the words of United States v. Nasse, 432 F.2d 1293, 1297 (7th Cir. 1970), cert. denied 401 U.S. 938, 91 S.Ct. 928, 28 L.Ed.2d 217 (1971), cert. denied sub nom. David v. United States, 402 U.S. 983, 91 S.Ct. 1657, 29 L.Ed.2d 148 (1971),

". . . the defendants knew that illegal acts on the part of a chain of participants . . . were necessary to the total operation."

On its facts, the case at bar is distinguishable from Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); on the other hand, it is akin to Blumenthal v. United States, 332 U.S. 539, 558, 68 S.Ct. 248, 92 L.Ed. 154 (1947), where, in an analogous situation, the court stated:

"The scheme was in fact the same scheme; the salesmen knew or must have known that others unknown to them were sharing in so large a project; and it hardly can be sufficient to relieve them that they did not know, when they joined the scheme, who those people were or exactly the parts they were playing in carrying out the common design and object of all. By their separate agreements, if such they were, they became parties to the larger common plan, joined together by their knowledge of its essential features and broad scope, though not of its exact limits, and by their common single goal."

There is also applicable here the language of this court in United States v. Hutul, 416 F.2d 607, 619 (7th Cir. 1969):

"We are confronted with a record which contains sufficient evidence to support the finding that the defendants were members of a sodality of fraud and knowingly participated together to achieve the common illegal goal."

## II. REBUTTAL TESTIMONY

It is urged that reversible error was committed when the secret service agent, Franzon, was permitted over objection to present rebuttal testimony concerning Barker's post-arrest statements. After Barker testified on his own behalf, he was asked on cross-examination about certain assertions made by him to the secret service agent; specifically, he was asked if he had told the

agent that he was not acquainted with Baggett and Lovell. Barker acknowledged that he had made a false statement to the agent and admitted that he actually had known Baggett and Lovell from previous dealings at a used car lot. Barker explained that he had made the false statement because he had not wanted to become involved in the transaction. In rebuttal, agent Franzon testified that he showed pictures of Baggett and Lovell to Barker after the latter's arrest and that Barker denied knowing either person.

The appellants contend that permitting agent Franzon to testify in rebuttal was improper because it constituted the impeachment of Barker on a collateral matter; the appellants maintain that whether Barker had previously known Baggett and Lovell in some other capacity would not demonstrate any criminal connection between them.

We are unable to adopt the appellants' position. Barker had been shown pictures of Baggett and Lovell, but when he was asked, on cross-examination, what he had said when those pictures were shown to him at the time of his arrest, his answers were remarkably vague. He did not make a flat admission that he had falsely told the agents that he did not know the persons in the pictures. His responses were so equivocal that the government was justified in offering rebuttal testimony designed to show that Barker had in fact been shown pictures of Baggett and Lovell and had expressly denied knowing them.

The rebuttal did not constitute impeachment on a collateral issue; if the government was able to prove that Barker made untrue exculpatory statements at the time of his arrest, the jury could consider that as "circumstantial evidence of defendant's consciousness of guilt." United States v. Riso, 405 F.2d 134, 138 (7th Cir. 1968), cert. denied 394 U.S. 959, 89 S.Ct. 1306, 22 L.Ed.2d 560 (1969).

## III. VENUE

With reference to count 5 of the indictment, there was evidence offered to show that in April, 1967, Kilpatrick borrowed his nephew's automobile and drove Baggett and Connis Dukes from Alabama to Dukes' tavern in Cicero, Illinois. They brought with them a large amount of counterfeit money, which Dukes secreted in a closet in his apartment above the tavern. It thus is apparent that at least some of Kilpatrick's acts relating to the offense charged in count 5 actually occurred in the district in which Kilpatrick was tried, and that venue as to count 5 was proper.

Since Kilpatrick was given concurrent seven-year sentences as to counts 2, 5 and 11, the government has argued that Kilpatrick is not entitled to a reversal of his convictions even in the absence of correct venue as to counts 2 and 11. However, the vitality of the "concurrent sentencing doctrine" has been diminished by recent cases that include Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), United States v. Tanner, (Nos. 17917, 17918, 17919, 7th Cir., decided March 3, 1972), and Davie v. United States, 447 F.2d 480 (7th Cir. 1971). Cf. United States v. Stevenson, 409 F.2d 354, 357 (7th Cir. 1969). We conclude that it is necessary to inquire into the validity of Kilpatrick's conviction under counts 2 and 11 of the indictment.

The evidence with respect to count 2 showed that Kilpatrick gave 15 counterfeit twenty dollar bills to Baggett in Alabama shortly after the latter's escape from prison in Georgia; Baggett subsequently sold the counterfeit bills in Cicero, Illinois in April, 1967. Count 11 of the indictment charged Kilpatrick with the sale of 4,000 counterfeit twenty dollar bills in Cicero on June 22, 1967; the evidence presented at the trial showed that shortly before June 22nd,

Baggett and Boris Mitcheff purchased the 4,000 bills from Lovell and Kilpatrick in Nashville, and Baggett and Mitcheff drove to Cicero and there disposed of the money.

The appellant maintains that 18 U.S.C. § 2 should be held unconstitutional. That statute has been construed to permit the prosecution of an aider and abettor not only in the district in which he committed the accessorial acts but also in the district where the substantive crime was committed.

The appellant concedes that the foregoing interpretation constitutes the "general rule" found in many decisions and treatises, and that it represents an enlargement of the common law rules of venue. See, for example, United States v. Bozza, 365 F.2d 206 (2d Cir. 1966); Eley v. United States, 117 F.2d 526 (6th Cir. 1941); 2 L. Orfield, Criminal Procedure Under the Federal Rules § 18:10; Annot., Multiple Venue of Federal Offenses, 5 L.Ed.2d 973, 975.

Congress has declared that an aider and abettor may be punished as a principal, and it follows that he may be punished in the same district as the principal. The appellant has presented no authority to the contrary, and we conclude that 18 U.S.C. § 2 does not violate either Article III, Section 2 of the Constitution or the sixth amendment thereof.

It is our determination that, on the basis of the "general rule" discussed above, the conviction of Kilpatrick for the offenses charged in counts 2 and 11 of the indictment may stand, notwithstanding the fact that the accessorial acts were committed in districts other than the northern district of Illinois. The substantive offenses occurred in Illinois and, pursuant to the interpretation given to 18 U.S.C. § 2, venue was proper with respect to counts 2 and 11.

The judgments of conviction of the defendants Kilpatrick and Barker are affirmed.