394 F.Supp. 581 (1975)
UNITED STATES of America,
v.
Jack L. CHESTNUT, Defendant.
No. 74 Cr. 1191.
United States District Court, S. D. New York.
April 8, 1975.
*582 *583 Paul J. Curran, U. S. Atty., for the Southern District of New York, New York City, for United States of America; Eugene F. Bannigan, Robert Gold, Asst. U. S. Attys., of counsel.
Douglas, W. Thomson, Jack S. Nordby, Thomson, Wylde, Nordby & Friedberg, John A. Cochrane, Cochrane & Bresnahan, Saint Paul, Minn., for Defendant.

OPINION
EDWARD WEINFELD, District Judge.
The defendant, Jack L. Chestnut, is under indictment upon a charge that he willfully and knowingly accepted and received, and did cause another to accept and receive, a corporate contribution to Hubert H. Humphrey's 1970 senatorial campaign, in violation of 18 U.S.C., sections 610 and 2. He now moves to dismiss the indictment on three grounds: (1) it violates the ex post facto clause of the United States Constitution;[1] (2) it fails to state an offense; and (3) the statutes in force in 1970 at the time of the alleged offense, 18 U.S.C., sections 610 and 591, were unconstitutional in that they were vague, overbroad and in violation of the First Amendment.

THE INDICTMENT
The indictment charges that from February 1, 1970 to November 3, 1970, within which period Hubert H. Humphrey was a candidate for the nomination of the Democratic-Farmer-Labor party for the office of United States Senator from the State of Minnesota, and later its candidate for that office, the defendant was Humphrey's campaign manager; that from on or about March 1, 1970 to on or about June 25, 1970 the defendant willfully and knowingly accepted and received a contribution from a corporation, American Milk Producers, Inc. ("AMPI"), on behalf of the Humphrey campaign; that this was accomplished by the defendant's arranging with AMPI's corporate officials that AMPI would pay the advertising firm of Lennon & Newell, Inc. ("L & N") for one month's services rendered by L & N to the Humphrey campaign; that the defendant arranged with an official of L & N that it would prepare invoices addressed to AMPI for one month's services rendered to the Humphrey campaign; that the defendant forwarded and caused to be forwarded these invoices to AMPI and further that he forwarded and caused to be forwarded to L & N two checks drawn on corporate accounts of AMPI, each payable to L & N in the sum of $6,000, dated June 1 and June 11, 1970, respectively.
Against the background of the indictment's charges we consider each branch of his motion.

I

That the indictment violates the ex post facto clause of the United States Constitution.
Defendant's claim is that the indictment is based upon a statute not in existence at the time the acts charged in the indictment occurred. At that time, the year 1970, the statute read:
"It is unlawful for . . . any corporation . . . to make a contribution or expenditure in connection with any election at which . . . a Senator . . . [is] to be voted for, or in connection with any primary election or political convention or caucus held to select candidates for . . . [such office], or for any candidate, political committee, or other person to accept or receive any contribution prohibited by this section."
*584 Thus, under the foregoing statute, it was unlawful for (1) a corporation to make "a contribution or expenditure," and (2) any person to accept or receive a "contribution." The 1970 version of section 610 contained no definition of "contribution" or "expenditure." These were defined in section 591 of Title 18, as follows:
"The term `contribution' includes a gift, subscription, loan, advance, or deposit, of money, or anything of value . . . ."
"The term `expenditure' includes a payment, distribution, loan, advance, deposit, or gift, of money, or anything of value . . . ."
The defendant, in support of his argument, observes that "expenditure" is the broader term since it adds "payment" and "distribution" to the words defining "contribution."
In 1972 section 610 was amended by, inter alia, the inclusion of a definition of "contribution or expenditure":
"As used in this section, the phrase `contribution or expenditure' shall include any direct or indirect payment, distribution, loan, advance, deposit, or gift of money, or any services, or anything of value . . . ."[2]
At the same time section 591 was also amended as to the definition of the terms "contribution" and "expenditure."[3] Here the defendant notes that under the amendment "expenditure" still remained the broader term, retaining the words "payment" and "distribution" and adding the word "purchase," which is not included in the definition of "contribution." He acknowledges that the issues raised by his argument are "technical and difficult."
The indictment, as is customary, refers, at the end of the charging allegations to the statute as follows: "Title 18, United States Code, sections 610 and 2." The defendant first argues that since this citation of section 610 at the end of the indictment, which was returned in December 1974, contains no reference to the official statutes at large or any indication that the indictment was grounded upon the 1970 version, therefore it was returned by the grand jury under the amended 1972 statute, even though the alleged violation occurred in 1970. However, this argument disregards the allegations as pleaded in the indictment. It charges simply that in 1970 during the time Humphrey was a senatorial candidate the defendant willfully and knowingly "did accept and receive . . . a corporate contribution from AMPI on behalf of the aforesaid Humphrey campaign . . . ." The allegations of the indictment, not the statutory citation[4] determines its validity.[5] As this court stated on another occasion,[6] the statute on which an indictment *585 is founded must be determined as a matter of law[7] from the facts pleaded therein.
The defendant advances other contentions to support his claim that in obtaining the indictment the prosecution and the grand jury proceeded under the statute now in effect and not as it existed in 1970. Here, he argues that the payment described in the indictment is an "indirect payment" from AMPI to the Humphrey campaign, and that only the 1972 version of section 610 contains any reference to an "indirect payment"; further, that the indictment refers to payment for "services" and the latter word also appears only in the 1972 amendment to section 610. Consequently, it is contended that necessarily the indictment was returned under the 1972 amendment. This contention is lacking in substance. The allegations which spell out the payment by AMPI to L & N for the services it rendered to the Humphrey campaign merely describe the details whereby it is charged the defendant engaged in artifice or subterfuge to conceal the receipt of the contribution. Instead of accepting and receiving the contribution directly from AMPI, the defendant allegedly conceived the method described whereby he received a contribution to the Humphrey campaign by arranging for AMPI to satisfy a debt owed by the Humphrey campaign to its advertising agency.
The defendant's further contention is equally without substance. He stresses that the copy of the indictment attached to a press release issued by the prosecution contained a copy of the 1972 version of section 610. A press release does not validate or invalidate an indictment. As already noted, its validity is determined by its pleaded allegations. It is therefore immaterial what statute was attached to a press release or what statute was in the prosecutor's mind when he obtained the indictment if the charges are embraced within a statute in force at the time of the alleged commission of the offense.[8] Moreover, there is not the slightest basis for indulging in a presumption that the prosecutor sought an indictment from the grand jury based upon a statute not in existence at the time the acts alleged therein occurred.
Finally, the defendant's assertion that the events described in the indictment could only be illegal under the present amended version of section 610 rather than the 1970 version of the statute is conclusively refuted by the Supreme Court's holding in Pipefitters Local Union No. 562 v. United States.[9] There, the Court held, with one exception not relevant in this discussion, that the Federal Election Campaign Act's amendments to section 610 "merely codifies prior law."[10] At the time the amendments were enacted, there was substantial agreement in Congress that the effect of the amendment to section 610 was a "mere codification and clarification" "to spell out in more detail what a labor union or corporation can or cannot do in connection with a federal election."[11] Thus defendant's claim that the insertion in section 610 of the definition of the phrase "contribution or expenditure" to supplement the definitions of "contribution" and "expenditure" in section 591[12] made conduct illegal which was theretofore legal is without merit.
*586 The motion to dismiss the indictment on the ground that it violates the ex post facto clause of the Constitution is denied.

II

That the indictment fails to state an offense under section 610.
As already noted, the statute prohibits corporations from making "a contribution or expenditure," but as to any person it makes it a crime only "to accept or receive" a prohibited "contribution." The defendant's challenge rests upon this distinction. He contends that while the indictment charges the acceptance and receipt of a campaign "contribution," the payment described is in fact an "expenditure" and therefore its acceptance and receipt was not unlawful under the statute.
As the court understands the defendant's argument, essentially it is that AMPI made a $12,000 "payment" to L & N for their services, and as such this was an "expenditure" by AMPI as that term is defined under the statute, not a "contribution." The argument rests upon the definitions of "contribution" and "expenditure" contained in the 1970 version of section 591. The defendant stresses that "contribution" as there defined does not include a "payment," whereas "expenditure" does. Since in his view the payment made to L & N was an "expenditure" by AMPI, no offense is stated. This rather strained argument, whereby the defendant concludes that the $12,000 payment was an expenditure, not a contribution, by AMPI, disregards the fact that the term "contribution" is defined under the 1970 version to include a "gift . . . of money, or anything of value . . . ." Clearly, picking up another's obligation  here a Humphrey campaign debt to L & N  is a gift of money, in short, a contribution to the Humphrey campaign.
The legislative history of section 610 further demonstrates that the defendant's contention is without merit. Section 610 was amended in 1947 by the Taft-Hartley Act[13] to strengthen the prohibition against corporate and union "contributions" by extending the statute's reach to prohibit "expenditures" in a continuing effort to assure the integrity of the federal electoral process and to eliminate corruptive influences upon those seeking and holding public office. While the statute clearly forbade union or corporate gifts directly to a candidate or his campaign organization, there was some doubt that its prohibitions went further.[14] Congressional investigations into the 1944 and 1946 elections established that the force of the then existing statute was blunted and evaded when unions participated in federal elections by making "expenditures" as distinguished from "contributions" to candidates or their committees.[15] The investigations revealed that unions had spent large sums of money to influence the outcome of these campaigns in opposing or supporting candidates by direct communication to the public through the distribution of pamphlets and campaign literature or the sponsoring of partisan radio broadcasts.[16] The Supreme Court emphasized in the Auto Workers case that the evil which Congress sought to eliminate by the 1947 addition of the ban on "expenditures" to the prohibition of "contributions" was "the use of corporation or union funds to influence the public at large to vote for a particular candidate *587 or a particular party."[17] The Court there held that an offense was stated under an indictment which charged that a union "used union dues to sponsor commercial television broadcasts designed to influence the electorate to select certain candidates for Congress in connection with the 1954 elections."[18] Thus the word "expenditure" refers to the use by a corporation or a union of its funds to promote its own political views by endorsing or opposing candidates for federal office. Such "expenditures" are made to meet the obligations incurred by the union or corporation. By contrast, a "contribution" in the 1970 version of the statute refers, inter alia, to a "gift . . . of money, or anything of value,"[19] typically made to a candidate or his campaign organization to help the candidate carry his message to the public.
Here the indictment specifically charges that the defendant accepted and received and caused L & N to accept and receive money from AMPI for L & N's bill for services rendered to the Humphrey campaign. In light of the statute's history and the Supreme Court's analysis and interpretation of it, this clearly constitutes the receipt of a "contribution." Though the indictment charges that the defendant caused AMPI, upon his instructions, to make the checks payable to L & N and that he then forwarded or caused to be forwarded the checks to L & N, this does not change the character of the transaction. It is the substance of the transaction and not its form that controls. The defendant does not suggest that AMPI itself owed L & N any money. The Humphrey campaign, not AMPI, incurred the debt to L & N, and the $12,000 was paid to the latter to discharge the Humphrey campaign's obligation to the advertising agency. No amount of rhetoric can obfuscate the substance of this simple charge that the defendant received on behalf of the Humphrey campaign a contribution, a "gift . . . of money" from AMPI, by arranging for the payment of the debt owed by the Humphrey campaign to L & N. The indictment clearly charges an offense under the 1970 version of section 610 within the definition of a "contribution" in the 1970 version of section 591.
Further, under the allegations of the indictment that the defendant caused L & N to accept and receive the contribution from AMPI, the defendant is charged under section 2 of Title 18. If the defendant himself accepted and received the money from AMPI in checks payable to him or to the Humphrey campaign, he would have accepted and received a contribution in violation of section 610. Section 2 provides that one who willfully causes another to do that which, if directly done by him, would violate the law is punishable as a principal. Thus, the indictment states an offense under sections 610 and 2 in that it charges the defendant with causing Lennen & Newell to accept and receive a contribution to the Humphrey campaign from AMPI.

III

That Sections 610 and 591 are unconstitutional.
Defendant's third argument is that the applicable versions of section 610 and section 591 are unconstitutional for two reasons: (1) because the language of the statutes is so vague that men of ordinary intelligence must guess as to their meaning, and (2) because the statutes' overly broad prohibitions have an impermissible chilling effect on First Amendment rights.

A.
A criminal statute may be declared void for vagueness where a court *588 concludes that an individual could not reasonably understand that his contemplated conduct is forbidden.[20] As the Supreme Court has stated:
"The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed."[21]
Entirely apart from consideration of a claim of due process violation based upon an alleged statutory infirmity of vagueness, a careful examination of a statute is required where it regulates conduct arguably affected with First Amendment interests. Stricter standards of definiteness apply here because when a man is required to act at his peril in this area, the free dissemination of ideas may be inhibited.[22]
The 1970 versions of sections 610 and 591 meet the applicable standards of definiteness under due process and First Amendment requirements. Indeed, defendant has offered no support for his claim that the statutes did not give a fair warning as to the criminality of his alleged conduct. All that is required is that the language employed convey a reasonable degree of certainty adequate to inform him of what is or is not prohibited.[23] It borders on the frivolous to suggest that the clearly defined specific prohibition against the receipt or acceptance by any person of union or corporate contributions is so vague that "men of common intelligence must necessarily guess at its meaning."[24] The statutes do not leave judges and jurors free to decide what is permitted and what is prohibited in each case.[25] Their terms are sufficiently clear and definite to meet constitutional scrutiny for vagueness.[26] Moreover, as the Supreme Court has recently stated, "even if the outermost boundaries of [the statute] may be imprecise, any such uncertainty has little relevance here, where [defendant's] conduct falls squarely within the `hard core' of the statute's proscriptions. . . ."[27]

B.
Defendant also argues that the applicable versions of sections 610 and 591 unconstitutionally impair the First Amendment rights of free speech, free press, and the right to assemble and petition government.[28]
Defendant acknowledges that the indictment on its face does not *589 allege an act of unlawful speech or assembly by him; nonetheless he asserts he may challenge the statute if on its face it purports to punish any citizen's protected speech or conduct. He relies upon the cases which hold that although a statute may be neither vague, overbroad, nor otherwise invalid as applied to the particular conduct charged against the defendant, he is permitted to raise its vagueness or unconstitutional overbreadth as applied to others, and if the law is found deficient in one of these respects, it may not be applied to him either, unless a limiting construction is placed on the statute.[29] Because of the important values protected by the First Amendment, the traditional rule of constitutional adjudication that one to whom a statute may constitutionally be applied will not be heard to challenge the statute on the ground that it may be applied unconstitutionally to another[30] is not invoked. Thus the usual rules of standing are relaxed in the First Amendment area and accordingly a defendant may challenge a statute not because his own First Amendment rights are infringed upon but because of the concern that the statute's existence may cause others not to engage in constitutionally protected expression.[31] However, the standing requirement in the First Amendment area has been further particularized by the Supreme Court in Broadrick v. Oklahoma[32] so that especially where conduct and not merely speech is involved, unless the statute is "substantially overbroad," a defendant may not challenge whatever overbreadth may exist. In these cases where the overbreadth is not "substantial . . . judged in relation to the statute's plainly legitimate sweep," the Court has decided that it will not entertain attacks on the facial validity of the statute but will deal with it on a case by case basis.[33] In light of Broadrick, whether the defendant has standing to raise a First Amendment challenge to sections 610 and 591 is not altogether free from doubt. However, to set the matter at rest, the court assumes that he has satisfied the standing requirement and proceeds to address the issues he raises.
Section 610, which grew out of a long series of congressional efforts dating back to 1907,[34] has two purposes. First, Congress sought "to avoid the deleterious influences on federal elections resulting from the use of money by those who exercise control over large aggregations of capital."[35] Second, Congress sought *590 to prevent corporate and union officials from using corporate or general union funds for political purposes without the consent of stockholders or union members. Collateral to this objective was the protection of minority interests from overbearing by union leadership or corporate officials, and in the case of unions, to safeguard employees who may decline to contribute to political funds from loss of jobs, union membership or reprisal by union officials.[36]
Union officials, members, corporate officers and stockholders are not barred by section 610 from participating in federal elections. Each is free to individually use his financial resources to the extent otherwise permitted by law. The statutory prohibition is only on funds derived from corporate treasuries and general union funds. In deciding the constitutionality of these prohibitions, the First Amendment rights of corporations and labor unions[37] must be weighed[38] against the substantial governmental interests[39] in preserving the integrity of the electoral process, in preventing corporate and union officials from using corporate assets or general union dues to promote political parties and candidates without the consent of stockholders or union members with different political views, and in protecting individuals who may refuse to contribute to campaign funds against reprisals. The need for these safeguards is particularly acute in the labor field where union membership can be a condition of employment.[40]
The right of free association and the right to participate in political elections is not without its limits.[41] As the Supreme Court has stated, the management, financing and conduct of political campaigns are subject to certain forms of governmental regulation. Thus, for example, the Court has held that "plainly identifiable acts of political management and political campaigning on the part of federal employees may constitutionally be prohibited."[42] So too, all fifty states restrict the political activities of their employees.[43]
*591 Given the government's legitimate interest in the purposes of section 610, the question is whether the government has chosen the "least drastic means" of protecting these interests or whether it has enacted overly broad prohibitions that unnecessarily impinge upon First Amendment rights.[44] Section 610 and its definitional counterpart section 591, in their 1970 form, meet this "least drastic means test." As authoritatively construed by the Supreme Court, the statute only prohibits contributions or expenditures from certain sources. For example, the statute prohibits only union contributions from monies derived from compulsory union dues and assessments. A union may establish a political organization for the receipt of voluntary contributions for union members.[45] Similarly, in United States v. C. I. O.,[46] the Supreme Court held that the statute does not prevent unions or corporation from publishing a regular periodical for union members, shareholders or customers that may contain political commentary. As the indictment in the case did not charge the defendant union with "circulating free copies to nonsubscribers, nonpurchasers, or among citizens not entitled to receive copies of `The CIO News,' as members of the union," it did not state an offense under the statute.[47] Thus the statute has been construed in a careful fashion to minimize its restrictive impact.
Defendant has presented no less restrictive alternative scheme of regulation that would protect the integrity of elections and the interests of minority union members and corporate shareholders. Given these legitimate governmental concerns, the statute is not overbroad in its scope. Defendant's attack on the facial validity of section 610 must therefore fail.[48] This conclusion is reinforced by the Supreme Court's holding that at least where conduct and not just speech is regulated by a statute, to declare the statute invalid on its face the Court must find that the overbreadth is not only real, but substantial as well when examined in relation to its legitimate purposes.[49]
Defendant's motion is denied in all respects. The case will proceed to trial on May 5, 1975.
NOTES
[1] Art. I, § 9, cl. 3.
[2] As amended Feb. 7, 1972, Pub.L. 92-225, Title II, § 205, 86 Stat. 10.
[3] 86 Stat. 8.
[4] The defendant's claim that there was error in the citation because it did not specifically indicate a reference to the 1970 version is frivolous. Even if the court agreed that it was error not to cite the specific 1970 version of section 610, Rule 7(c) of the Federal Rules of Criminal Procedure provides that error in the citation shall not be a ground for dismissal of the indictment if the error did not mislead the defendant to his prejudice. The defendant is aware that the prosecution is grounded on section 610, but alleges that it is not clear under which version of the statute the indictment is brought. Since the disposition of this motion resolves the issue in advance of trial, clearly he is not prejudiced. United States v. Calabro, 467 F.2d 973, 981 (2d Cir. 1972), cert. denied, 410 U.S. 926, 93 S.Ct. 1357, 35 L.Ed.2d 587 (1973); United States v. Galgano, 281 F.2d 908, 910-11 (2d Cir. 1960) cert. denied sub nom., Carminati v. United States, 366 U.S. 960, 81 S.Ct. 1916, 6 L.Ed.2d 1253 and Galgano v. United States, 366 U.S. 967, 81 S.Ct. 1929, 6 L.Ed.2d 1257 (1961).
[5] United States v. Bethany, 489 F.2d 91, 93 (5th Cir. 1974).
[6] United States v. McKenney, 181 F.Supp. 143, 146 (S.D.N.Y.1959), aff'd sub. nom., United States v. Galgano, 281 F.2d 908 (2d Cir. 1960), cert. denied sub nom., Carminati v. United States, 366 U.S. 960, 81 S.Ct. 1916, 6 L.Ed.2d 1253 and Galgano v. United States, 366 U.S. 967, 81 S.Ct. 1929, 6 L.Ed.2d 1257 (1961).
[7] United States v. Nixon, 235 U.S. 231, 235, 35 S.Ct. 49, 59 L.Ed. 207 (1914); United States v. Meyer, 266 F.2d 747, 753 (5th Cir.), cert. denied, 361 U.S. 875, 80 S.Ct. 138, 4 L.Ed.2d 113 (1959).
[8] United States v. Hutcheson, 312 U.S. 219, 229, 61 S.Ct. 463, 85 L.Ed. 788 (1941); Williams v. United States, 168 U.S. 382, 389, 18 S.Ct. 92, 42 L.Ed. 509 (1897); Paz Morales v. United States. 278 F.2d 598 (1st Cir. 1960); Pettway v. United States, 216 F.2d 106 (6th Cir. 1954); United States v. Kolodny, 149 F.2d 210 (2d Cir. 1945).
[9] 407 U.S. 385, 92 S.Ct. 2247, 33 L.Ed.2d 11 (1972).
[10] 407 U.S. at 399, 92 S.Ct. 2247.
[11] 407 U.S. at 410-11, 92 S.Ct. at 2262.
[12] Itself amended in 1972, 86 Stat. 8.
[13] 61 Stat. 159.
[14] See United States v. Auto Workers, 352 U.S. 567, 579-80, 77 S.Ct. 529, 1 L.Ed.2d 563 (1957); United States v. C.I.O., 335 U.S. 106, 115, 68 S.Ct. 1349, 92 L.Ed. 1849 (1948).
[15] S.Rep.No.101, 79th Cong., 1st Sess. 23.
[16] United States v. Auto Workers, 352 U.S. 567, 580-89, 77 S.Ct. 529, 1 L.Ed.2d 563 (1957).
[17] Id. at 589, 77 S.Ct. at 540.
[18] Id. at 585, 77 S.Ct. at 538.
[19] 18 U.S.C. § 591.
[20] United States v. National Dairy Products Corp., 372 U.S. 29, 32-33, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963).
[21] United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954).
[22] Cramp v. Board of Public Instruction, 368 U.S. 278, 287, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961); Smith v. California, 361 U.S. 147, 151, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959); Winters v. People of State of New York, 333 U.S. 507, 516-20, 68 S.Ct. 665, 92 L.Ed. 840 (1948).
[23] United States v. Pope, 189 F.Supp. 12, 21 (S.D.N.Y.1960).
[24] Connelly v. General Const. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).
[25] See Giaccio v. Pennsylvania, 382 U.S. 399, 402-03, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966).
[26] United States v. Pipefitters Local Union No. 562, 434 F.2d 1116, 1123-24 (8th Cir. 1970), adhered to in en banc decision, 434 F.2d 1127, rev'd and vacated on other grounds, 407 U.S. 385, 92 S.Ct. 2247, 33 L.Ed.2d 11 (1972). See Broadrick v. Oklahoma, 413 U.S. 601, 607-08, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); Civil Service Comm'n v. Letter Carriers, 413 U.S. 548, 578-79, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973).
[27] Broadrick v. Oklahoma, 413 U.S. 601, 608, 93 S.Ct. 2908, 2914, 37 L.Ed.2d 830 (1973).
[28] Two courts of appeals have upheld the constitutionality of § 610, United States v. Boyle, 157 U.S.App.D.C. 166, 482 F.2d 755, 763-64, cert. denied, 414 U.S. 1076, 94 S.Ct. 593, 38 L.Ed.2d 483 (1973); United States v. Pipefitters Local Union No. 562, 434 F.2d 1116 (8th Cir. 1970), adhered to in en banc decision, 434 F.2d 1127, rev'd and vacated on other grounds, 407 U.S. 385, 92 S.Ct. 2247, 33 L.Ed.2d 11 (1972).
[29] Lewis v. New Orleans, 415 U.S. 130, 133-34, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974); Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); Coates v. Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed. 2d 214 (1971). See also Dombrowski v. Pfister, 380 U.S. 479, 491-92, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).
[30] Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); United States v. Raines, 362 U.S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960); Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 513, 57 S.Ct. 868, 81 L.Ed. 1245 (1937); United States v. Wurzbach, 280 U.S. 396, 50 S.Ct. 167, 74 L.Ed. 508 (1930); Hatch v. Reardon, 204 U.S. 152, 160-61, 27 S.Ct. 188, 51 L.Ed. 415 (1907); Supervisors v. Stanley, 105 U.S. 305, 311-15, 26 L.Ed. 1044 (1882); Austin v. The Aldermen, 7 Wall. 694, 698-99, 19 L.Ed. 224 (1869).
[31] Broadrick v. Oklahoma, 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1972).
[32] 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1972).
[33] 413 U.S. 615-16, 93 S.Ct. at 2918. Whether this represents a reversal or just a clarification of Coates v. Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971), on which defendant relies, remains to be seen. Compare the Broadrick majority, 413 U.S. at 616 n. 14, 93 S.Ct. 2908 with Mr. Justice Brennan's dissent, 413 U.S. at 622, 93 S.Ct. 2908. See "Overbreadth Review and the Burger Court," 49 N.Y. U.L.R. 532 (1974).
[34] United States v. Auto Workers, 352 U.S. 567, 570-75, 77 S.Ct. 529, 1 L.Ed.2d 563 (1957).
[35] United States v. Auto Workers, 352 U.S. 567, 585, 77 S.Ct. 529, 538, 1 L.Ed.2d 563 (1957). See Pipefitters Local No. 562 v. United States, 407 U.S. 385, 415-16, 92 S.Ct. 2247, 33 L.Ed.2d 11 (1972); United States v. C. I. O., 335 U.S. 106, 113, 68 S.Ct. 1349, 92 L.Ed. 1849 (1948).
[36] Pipefitters Local Union No. 562 v. United States, 407 U.S. 385, 413-14, 92 S.Ct. 2247, 33 L.Ed.2d 11 (1972); United States v. Auto Workers, 352 U.S. 567, 582, 77 S.Ct. 529, 1 L.Ed.2d 563 (1957); United States v. C. I. O., 335 U.S. 106, 113, 115, 68 S.Ct. 1349, 92 L.Ed. 1849 (1948); Ash v. Cort, 496 F.2d 416, 422 (3d Cir. 1974), cert. granted, 419 U.S. 992, 95 S.Ct. 302, 42 L.Ed. 2d 264 (1975).
[37] United Mine Workers v. Illinois State Bar Ass'n, 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967); NAACP v. Button, 371 U.S. 415, 428, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); Grosjean v. American Press Co., 297 U.S. 233, 244, 56 S.Ct. 444, 80 L.Ed. 660 (1936).
[38] Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Konigsberg v. State Bar of California, 366 U.S. 36, 50-51, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961).
[39] See Broadrick v. Oklahoma, 413 U.S. 601, 606, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); Civil Service Comm'n v. Letter Carriers, 413 U.S. 548, 557-67, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973).
[40] See Pipefitters Local Union No. 562 v. United States, 407 U.S. 385, 414, 92 S.Ct. 2247, 33 L.Ed.2d 11 (1972); International Ass'n of Machinists v. Street, 367 U.S. 740, 776-77, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961) (Douglas, J. concurring.)
[41] Civil Service Comm'n v. Letter Carriers, 413 U.S. 548, 567, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); Rosario v. Rockefeller, 410 U.S. 752, 760-62, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973); Dunn v. Blumstein, 405 U.S. 330, 336, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); Bullock v. Carter, 405 U.S. 134, 140-41, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); Jenness v. Fortson, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971); Williams v. Rhodes, 393 U.S. 23, 30-31, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). See also Kusper v. Pontikes, 414 U.S. 51, 56-61, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973).
[42] Civil Service Comm'n v. Letter Carriers, 413 U.S. 548, 567, 93 S.Ct. 2880, 2890, 37 L.Ed.2d 796 (1973). See "The Supreme Court, 1972 Term," 87 Harv.L.Rev. 141-49 (1973).
[43] Civil Service Comm'n v. Letter Carriers, 413 U.S. at 563, 93 S.Ct. 2880; Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).
[44] Kusper v. Pontikes, 414 U.S. 51, 59, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973); Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960).
[45] Pipefitters Local Union No. 562 v. United States, 407 U.S. 385, 401, 92 S.Ct. 2247, 33 L.Ed.2d 11 (1972).
[46] 335 U.S. 106, 68 S.Ct. 1349, 92 L.Ed. 1849 (1948).
[47] 335 U.S. at 111, 68 S.Ct. at 1352.
[48] United States v. Boyle, 157 U.S.App.D.C. 166, 482 F.2d 763-64, cert. denied, 414 U.S. 1076, 94 S.Ct. 593, 38 L.Ed.2d 483 (1973); United States v. Pipefitters Local Union No. 562, 434 F.2d 1116 (8th Cir. 1970), adhered to in en banc decision, 434 F.2d 1127, rev'd and vacated on other grounds, 407 U.S. 385, 92 S.Ct. 2247, 33 L.Ed.2d 11 (1972). But see "The Constitutionality of the Federal Ban on Corporate and Union Campaign Contributions and Expenditures," 42 U.Chi.L.Rev. 148 (1974).
[49] Broadrick v. Oklahoma, 413 U.S. 601, 615, 618, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). See "The Supreme Court, 1972 Term," 87 Harv.L.Rev. 149-153 (1973).