**UNITED STATES of America,**

v.

**Jack L. CHESTNUT, Defendant.**

**No. 74 Cr. 1191.**

United States District Court,
S. D. New York.

June 25, 1975.

States; Eugene F. Bannigan, Robert Gold, Asst. U. S. Attys., of counsel.

Thomson, Wylde, Nordby & Friedberg and Cochrane & Bresnahan, St. Paul, Minn., for defendant; Douglas W. Thomson, Jack S. Nordby, John A. Cochrane, St. Paul, Minn., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

The defendant, Jack L. Chestnut, the campaign manager for Senator Hubert H. Humphrey's 1970 campaign for the office of United States Senator from Minnesota, was convicted after a jury trial of willfully violating 18 U.S.C., sections 610 and 2. The charge was that the defendant caused Lennen & Newell, Inc., a New York advertising agency employed by the Humphrey campaign, to accept or receive an illegal contribution to the Humphrey campaign from Associated Milk Producers, Inc. ("AMPI") a corporation.

The defendant now moves pursuant to Rule 29 of the Federal Rules of Criminal Procedure for a judgment of acquittal upon various grounds, including that the evidence is insufficient to sustain the conviction, lack of venue in this district, errors in the admission of evidence, and prejudicial instructions to the jury. Other grounds advanced for the judgment of acquittal were previously argued in a pretrial motion for dismissal of the indictment. As to these, the court adheres to its previous rulings, the bases for which are fully explicated in its opinion.[1]

Paul J. Curran, U. S. Atty., S. D. N. Y., New York City, for the United

---

1. *United States v. Chestnut*, 394 F.Supp. 581 (S.D.N.Y.1975). The court held, *inter alia*, that the acts charged in the indictment constitute a "contribution" as that term was defined in the 1970 version of § 591 of Title 18 and thus the indictment stated an offense under §§ 610 and 2. The government's evidence at trial was consistent with the allegations of the indictment. There was no need to reopen the pretrial motion as to whether the indictment charged an offense under §

610, which only prohibits the receipt or acceptance of an illegal "contribution," not an "expenditure." Thus, contrary to defendant's claim, there was no occasion to instruct the jury on the distinction between a "contribution" and an "expenditure" as those terms were used in the 1970 version of §§ 591 and 610, any more than a court should charge the jury on a lesser included offense, duress or entrapment where the evidence does not warrant it. *United States v.*

▉ The first challenge to the guilty verdict is that the evidence failed to establish willfulness and consequently a verdict of not guilty is required as a matter of law. The current rule in this circuit is that upon a motion for a judgment of acquittal the trial judge must determine whether upon the evidence, giving full play to the jury's right to determine credibility, weigh the evidence and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt.[2]

▉ Considering the evidence in the view most favorable to the government on this motion, as the court must,[3] the court readily finds that "a reasonable mind might fairly conclude" that the defendant willfully violated section 610 beyond a reasonable doubt—that the defendant knew he was causing another to accept or receive an illegal corporate contribution.[4]

Willfulness rarely can be established by direct evidence; usually it is determined by circumstantial evidence, an overall consideration of all the facts and circumstances and the reasonable inferences to be drawn therefrom.

The hard thrust of the defense was that the defendant believed that the contribution came from a fund associated with AMPI, composed of voluntary donations from its members, which legally could make contributions to political campaigns.[5] However, the evidence established that the contribution came from AMPI's general corporate funds and that it was received in an indirect manner devised by the defendant. It was the defendant who directed both Lennen & Newell, Inc. and Bob Lilly, assistant to the general manager of AMPI, to carry out the procedures whereby the advertising agency, which had rendered services to the Humphrey campaign, not to AMPI, would prepare invoices to be made out to AMPI and for AMPI to pay those invoices. It was the defendant who instructed Lilly not to pay the initial invoices because they were not in proper form, but to await corrected bills. It was the defendant who sent a letter to Lilly to have AMPI pay the enclosed four corrected invoices each in the sum of $3,000, instructing him to forward checks made payable to Lennen & Newell to him, the defendant, at his office in Minneapolis, Minnesota. Thereafter, Lilly, pursuant to these instructions, forwarded to the defendant in Minneapolis two $6,000 AMPI checks drawn on a corporate account and payable to Lennen & Newell, Inc. The checks were thereafter deposited by Lennen & Newell in its bank account in this city at Bankers Trust Company. The checks upon

Marin, 513 F.2d 974 (2d Cir. 1975); United States v. Carroll, 510 F.2d 507 (2d Cir. 1975); United States v. Marcey, 142 U.S. App.D.C. 253, 440 F.2d 281, 285 n. 20 (1971). There was no evidence presented at the trial that raised a factual question as to whether or not the transfer of AMPI funds constituted a contribution. It is clear that AMPI made a contribution to the Humphrey campaign.

2. United States v. Taylor, 464 F.2d 240, 243 (2d Cir. 1972), overruling the prior "fair preponderance" test articulated by Judge Learned Hand in United States v. Feinberg, 140 F.2d 592, 594 (2d Cir.), cert. denied, 322 U.S. 726, 64 S.Ct. 943, 88 L.Ed. 1562 (1944). See also United States v. De-Garces, 518 F.2d 1156 (2d Cir. 1975); United States v. Freeman, 498 F.2d 569, 571 (2d Cir. 1974); United States v. Carneglia, 468 F.2d 1084, 1087 (2d Cir.), cert. denied sub nom. Inzerillo v. United States, 410 U.S. 945, 93 S.Ct. 1391, 35 L.Ed.2d 611 (1973).

3. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Freeman, 498 F.2d 569 (2d Cir. 1974); United States v. McCarthy, 473 F.2d 300 (2d Cir. 1972); United States v. D'Avanzo, 443 F.2d 1224, 1225 (2d Cir.), cert. denied, 404 U.S. 850, 92 S.Ct. 86, 30 L.Ed.2d 89 (1970); United States v. Kahaner, 317 F.2d 459 (2d Cir.), cert. denied, 375 U.S. 835, 84 S.Ct. 62, 11 L.Ed.2d 65 (1963).

4. See United States v. Pipefitters Local Union, 434 F.2d 1116, 1124–25 (8th Cir. 1970), rev'd on other grounds, 407 U.S. 385, 400 n. 11, 92 S.Ct. 2247, 33 L.Ed.2d 11 (1972).

5. Pipefitters Local Union v. United States, 407 U.S. 385, 409, 92 S.Ct. 2247, 33 L.Ed.2d 11 (1972).

their face in two places in bold letters indicated they were corporate checks drawn on a corporate bank account.

The defendant contends that in the absence of direct evidence he saw or would in due course have seen the crucial checks, there was no basis upon which a reasonable mind might fairly conclude beyond a reasonable doubt that he knew that AMPI was using its general corporate funds and thus making an illegal corporate contribution, rather than using funds derived from AMPI's voluntary political affiliate, which could make a legal contribution to the campaign. The short answer to this contention is that the defendant's acts and conduct relating to the contribution come within the classic statement by the Supreme Court of circumstances under which willfulness may be inferred, including the "handling of one's affairs to avoid making the records usual in [the] transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal."[6] Usually a contributor to a political campaign sends his contribution directly to the campaign committee and normally the committee makes direct payment to those to whom it is indebted. Here the defendant arranged with Lennen & Newell, Inc. for it to bill AMPI for services Lennen & Newell had rendered not to AMPI, but to the Humphrey campaign. As a result there was no documentation that AMPI had contributed $12,000 to the Humphrey campaign.

The defendant did not dispute that the two $6,000 AMPI corporate checks were received in his offices; however, he denied he saw the checks; he emphasizes the lack of direct evidence that he saw the checks after AMPI forwarded them to his office pursuant to his instructions. With the checks upon their face carrying their own indicia that they were drawn on a corporate account,

his counsel recognize on this motion that this was a central matter on the issue of willfulness. Thus they state: "The question of fact in this case ultimately was whether Mr. Chestnut saw the AMPI checks . . . ."[7] Indeed, the court, in its instructions to the jury, suggested that a substantial question is: "Did the defendant ever see the AMPI checks of $6000 each . . . ?"[8] The jury answered by its verdict. There is no reason to set it aside. The totality of evidence based upon the defendant's own acts, conduct and all the surrounding circumstances warranted the jurors in drawing the reasonable inference that defendant saw the checks with their corporate legend and that he acted willfully in causing Lennen & Newell to receive or accept this corporate contribution to the Humphrey campaign which he knew was unlawful.

The defendant next contends that the evidence failed to prove venue in the Southern District of New York. In addition, he argues that venue was improper in this district.

There is no dispute that the AMPI checks were deposited by Lennen & Newell in its bank account in Manhattan and that, so far as the evidence indicates, the defendant was not then present in this district. The evidence does indicate that defendant's various acts in arranging for Lennen & Newell to bill AMPI for the advertising services and AMPI's payment with its corporate checks occurred in Minnesota. There is no proof of where the checks were physically delivered to Lennen & Newell, Inc. prior to their deposit in this district. Under these circumstances, was venue proper in this district?

 The Sixth Amendment does not provide a defendant with a constitutional right to trial in his home district.[9] Rather, both the Sixth Amend-

---

6. *Spies v. United States,* 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943).

7. Defendant's Post Trial Memorandum p. 18.

8. Trial Transcript 561.

9. *Platt v. Minnesota Mining & Mfg. Co.,* 376 U.S. 240, 245, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964); *Johnston v. United States,* 351 U.S. 215, 220–21, 76 S.Ct. 739, 100 L.Ed. 1097 (1956).

ment and Article III, section 2, of the Constitution provide that a defendant must be tried in the state and district where the crime was committed. Thus in determining proper venue, the court must determine the place of the crime [10] after an analysis of the nature of the alleged offense.[11]

The defendant was found guilty of violating the law making it illegal for any "person to accept or receive" political campaign contributions prohibited by that section.[12] The jury was instructed that under another provision of law, "[w]hoever wilfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."[13] The key words of the substantive statutory prohibition are "to accept or receive" an illegal contribution The determination of the venue question requires the court to examine the statute "to ascertain when the defendant's actions have progressed to the point where a court can confidently conclude that a crime has been committed."[14]

■ Where a statute makes it illegal to receive money under certain circumstances and the recipient is given a check, venue is proper where the check is deposited and the proceeds credited to the recipient's account. Thus in *Burton v. United States*,[15] the defendant was charged with violating a statute forbidding a United States Senator from receiving compensation for services rendered in relation to a proceeding in which the United States is an interested party. The Supreme Court held that venue was proper in the district where the checks were deposited and honored, not where the check was physically delivered to the Senator.[16] In *Burton*, the checks were deposited and credited to defendant in the same place where they were physically delivered to him, but as Judge Learned Hand later indicated, the Supreme Court's analysis makes clear that venue did not turn on where the checks were physically delivered.[17] In another prosecution under the same statute, although the defendant's services were performed and the checks were physically delivered to him in Washington, D. C., the court held that venue was proper in the District of Maryland, where the compensation was received, that is, where the checks were deposited and the defendant's account was credited.[18]

■ The government's theory of the case was that the defendant caused Lennen & Newell to accept or receive an illegal corporate campaign contribution to the Humphrey campaign. Following their receipt in Minnesota, the AMPI checks were turned over to Lennen & Newell and were deposited in its bank account in the Southern District of New York. The defendant had not caused another to commit the ultimate essential element of the crime until the checks were received or accepted by Lennen &

---

10. *United States v. Cores*, 356 U.S. 405, 407, 78 S.Ct. 875, 2 L.Ed.2d 873 (1958) ; *United States v. Anderson*, 328 U.S. 699, 66 S.Ct. 1213, 90 L.Ed. 1529 (1946).

11. *Travis v. United States*, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961).

12. 18 U.S.C. § 610.

13. 18 U.S.C. § 2(b).

14. *United States v. Bithoney*, 472 F.2d 16, 23 (2d Cir.), *cert. denied*, 412 U.S. 938, 93 S. Ct. 2771, 37 L.Ed.2d 397 (1973).

15. 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482 (1905).

16. *Id.*

17. *United States v. Lotsch*, 102 F.2d 35, 36 (2d Cir.), *cert. denied*, 307 U.S. 622, 59 S. Ct. 793, 83 L.Ed. 1500 (1939). *See also United States v. Johnson*, 337 F.2d 180, 193 (4th Cir. 1964), *aff'd*, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966).

18. *United States v. Johnson*, 337 F.2d 180, 193–95 (4th Cir. 1964), *aff'd*, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966). *See also United States v. McMaster*, 343 F.2d 176, 181 (6th Cir.), *cert. denied*, 382 U.S. 818, 86 S.Ct. 42, 15 L.Ed.2d 65 (1965).

Newell, Inc. in payment for services rendered by it to the Humphrey campaign. Not until the checks were so received or accepted upon their deposit and credited to the Lennen & Newell account in this district was the final element of the crime effected. Venue in this district was therefore proper.

The defendant also argues that venue is improper in this district because all of his conduct in causing the acceptance or receipt was performed by him in Minnesota. The argument is without substance. "The constitutional requirement is as to the locality of the offense, and not the personal presence of the offender."[19] For example, the general rule is that where the crime charged is a failure to do a legally required act, the place fixed for its performance, not the place where the defendant remained, fixes the situs of the crime.[20] An accessory may be tried in the district where the principal committed the crime even though the accessory never entered the district.[21] In prosecu-

tions for making false statements in a matter within the jurisdiction of a federal agency, venue is improper in the district where the affidavit was written and mailed, but lies instead where the affidavit is required to be filed[22] or where agency decision in reliance thereon takes place.[23]

The court does not understand the defendant to argue that merely upon the receipt of the checks in Minnesota or even upon his causing the checks to be delivered to Lennen & Newell, a crime was committed. Indeed, the defendant could have returned the checks to AMPI, or destroyed them, or never caused their delivery to the advertising agency, or even recalled them after Lennen & Newell had physically received them, in which event no crime would have been committed since the final element of the crime would have been lacking. The receipt or acceptance of the contribution occurred when the checks were deposited in New York in payment of a Humphrey campaign bill. The offense occurred in this district and venue was proper.[24]

---

19. *Armour Packing Co. v. United States*, 209 U.S. 56, 76, 28 S.Ct. 428, 433, 52 L.Ed. 681 (1908). *See also Travis v. United States*, 364 U.S. 631, 634, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961).

20. Where a defendant was charged with failing to report for civilian work to a hospital in another district as ordered to by his draft board, which was in the district in which he resided, venue was proper only in the district where the hospital was located, not in the district of his residence where he remained throughout the relevant period. *Johnston v. United States*, 351 U.S. 215, 220–21, 76 S.Ct. 739, 100 L.Ed. 1097 (1956). *See also United States v. Dyson*, 469 F.2d 735 (5th Cir. 1972); *United States v. Clark*, 468 F.2d 708 (3d Cir. 1972); *United States v. Turner*, 244 F.2d 404 (2d Cir.), *cert. denied*, 354 U.S. 926, 77 S.Ct. 1384, 1 L.Ed.2d 1438 (1957).

21. *United States v. Buckhanon*, 505 F.2d 1079, 1083 (8th Cir. 1974); *United States v. Kilpatrick*, 458 F.2d 864 (7th Cir. 1972); *United States v. Bozza*, 365 F.2d 206, 220–21 (2d Cir. 1966); *United States v. Gillette*, 189 F.2d 449, 451–52 (2d Cir.), *cert. denied*, 342 U.S. 827, 72 S.Ct. 49, 96 L.Ed. 625 (1951).

22. *Travis v. United States*, 364 U.S. 631, 634, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961); *United States v. Lombardo*, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897 (1916).

23. *United States v. Candella*, 487 F.2d 1223, 1228 (2d Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1563, 39 L.Ed.2d 872 (1974). *See also United States v. Bithoney*, 472 F.2d 16, 24 (2d Cir.), *cert. denied*, 412 U.S. 938, 93 S.Ct. 2771, 37 L.Ed.2d 397 (1973).

24. Accordingly the court does not reach the question of whether under 18 U.S.C. § 3237(a) venue would also be proper in the District of Minnesota. The defendant argues that venue lies only in that district. Contrary to the defendant's contention, Judge Friendly's analysis in *United States v. Bozza*, 365 F.2d 206, 220 (2d Cir. 1966), suggests that the government may have had a more difficult problem had the prosecution been in the District of Minnesota. *But see United States v. Taller*, 394 F.2d 435, 437–38 (2d Cir.), *cert. denied*, 393 U.S. 839, 89 S.Ct. 115, 21 L.Ed.2d 109 (1968).

So, too, this disposition makes it unnecessary to consider whether, under 18 U.S.C. § 3237(a), when the tainted corporate contribution is made by check, the receipt of the contribution is a continuing offense which

This disposition makes it unnecessary to consider the government's contention that in any event the defendant waived the venue issue by not moving at the appropriate time.

Other items raised by the defendant in support of his motion for a new trial require little discussion.

 The defendant argues that proof of similar acts was improperly admitted. Proof of similar acts on the defendant's part in accepting three other contributions from AMPI employee Bob Lilly was admitted solely as tending to show a pattern of conduct on the issues of knowledge and intent at the time of the events charged in the indictment.[25] Cautionary instructions were given to the jury as to the limited purpose for which this evidence was received,[26] first when offered and again in the final instructions.

The defendant further contends that the court's instruction on the credibility of the defendant as a witness was prejudicial. The instruction was proper and in accordance with authority in this circuit.[27]

The court has considered the other items raised by the defendant and finds them without merit.

A careful review of the record convinces the court that the jury's verdict is supported by substantial evidence and that the defendant received a fundamentally fair trial.

The motions for a judgment of acquittal, new trial and arrest of judgment are denied in all respects.

---

does not end until the proceeds of the check have been made fully available to the recipient and hence venue may be in more than one district if the check is deposited in one district and paid in another. *See United States v. Johnson*, 337 F.2d 180, 193–95 (4th Cir. 1964), *aff'd*, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966).

25. *See United States v. Campanile*, 516 F.2d 288 (2d Cir. 1975) ; *United States v. Gerry*, 515 F.2d 130 (2d Cir. 1975) ; *United States v. Papadakis*, 510 F.2d 287, 294–95 (2d Cir. 1975) ; *United States v. Miller*, 478 F.2d 1315 (2d Cir.), *cert. denied*, 414 U.S. 851, 94 S.Ct. 144, 38 L.Ed.2d 100 (1973) ; *United States v. Williams*, 470 F.2d 915, 917 (2d Cir. 1972) ; *United States v. Johnson*, 382 F.2d 280, 281 (2d Cir. 1970).

26. T. 556–57. *See United States v. Papadakis*, 510 F.2d 287, 295 (2d Cir. 1975) ; *United*

*States v. Klein*, 340 F.2d 547, 548–49 (2d Cir.), *cert. denied*, 382 U.S. 850, 86 S.Ct. 97, 15 L.Ed.2d 89 (1965).

27. *United States v. Dozier*, 522 F.2d 224 (2d Cir. 1975) ; *United States v. Tyers*, 487 F.2d 828 (2d Cir. 1973) ; *United States v. Mahler*, 363 F.2d 673 (2d Cir. 1966) ; *United States v. Sullivan*, 329 F.2d 755 (2d Cir.), *cert. denied*, 377 U.S. 1005, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964). *See also Reagan v. United States*, 157 U.S. 301, 304–11, 15 S.Ct. 610, 39 L.Ed. 709 (1895) ; *United States v. Hill*, 152 U.S.App.D.C. 213, 470 F.2d 361 (1972). The language used by the court was recently reviewed and approved by our Court of Appeals in *United States v. Sclafani*, 487 F.2d 245 (2d Cir.), *cert. denied*, 414 U.S. 1023, 94 S.Ct. 445, 38 L.Ed.2d 313 (1973).