**UNITED STATES of America,**

**v.**

**The AUSTIN COMPANY, Incorporated and Tom N. Austin, Defendants.**

**No. 67 Cr. 569.**

United States District Court
S. D. New York.

Oct. 2, 1967.

Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, New

York City, for the United States, Roger J. Hawke, Asst. U. S. Atty., of counsel.

Sullivan & Cromwell, New York City, for defendant The Austin Co., Inc., John W. Dickey, Stanley S. Arkin, New York City, of counsel.

Harris B. Steinberg, New York City, for defendant Tom N. Austin.

## OPINION

WEINFELD, District Judge.

The defendants, The Austin Company, Incorporated and Tom N. Austin, its president, move pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure for a transfer of this prosecution to the Eastern District of Tennessee, where the corporate defendant maintains its office and its president resides.[1] The defendants are charged with conspiracy to violate, and with violations of, 18 U. S.C. section 1001, by making and causing to be made false statements in Supplier's Certificates (Forms CCC–329), required by the Department of Agriculture to be submitted under the Public Law 480 export program.[2] The charges center about the alleged falsity of statements that no agents' commissions were included in the invoice prices and that the corporate defendant had not given or arranged to give, by way of side payments, kickbacks or otherwise, any benefit in connection with contracts for the sales shown on the Certificates.

█ The conspiracy count charges as a part thereof the use of false Certificates to cover up that another alleged co-conspirator, MISR Foreign Trade Co., S.A.E., was receiving and did receive from the corporate defendant commissions by way of side payments and kickbacks. The substantive counts charge nineteen separate violations based on specific Certificates submitted by the corporate defendant over a period from June 1962 to October 1965, with accompanying drafts covering invoice shipments to Egyptian buyers, which, in due course, were paid by banks in this district. Under the procedure the Supplier's Certificates were submitted to the banks which were in receipt of Letters of Credit in favor of The Austin Company issued on behalf of the Egyptian importer. The banks had previously received Letters of Commitment from the Commodity Credit Corporation guaranteeing reimbursement of drafts accepted and paid against the Letters of Credit. The payments made by the banks were credited to the corporate defendant's accounts maintained in banks in this district. The New York banks delivered the Certificates of The Austin County, the subject matter of the indictment, which accompanied the drafts to the Federal Reserve Bank in this district, which reimbursed the paying banks, charging the payment against the Commodity Credit Corporation account. The documents against which payments were made in due course were forwarded to the appropriate governmental agency within the Commodity Credit Corporation in Washington, D. C. Thus, the basic facts, the submission of the allegedly false documents and the payments against them, as well as other significant factors relating thereto, occurred within this district.

The essence of the motion to transfer is the alleged (1) interference with normal business activities of the corporate defendant; (2) difficulty of attendance and inconvenience of the individual defendant, other personnel of the corporation and witnesses; (3) difficulty of transporting books, records and documents from Tennessee to New York; and (4) increased financial burden. The argument of the motion disclosed that the contested issue in the case is comparatively simple. There is no substantial dispute as to the nineteen transactions that are the subject of the substantive offenses, nor as to the documents issued and against which payments were made; nor is there any substantial contention as to

---

1. The defendants also moved to dismiss the indictment for lack of venue, but upon argument of the motion the same was withdrawn.

2. Agricultural Trade Development and Assistance Act of 1954, 7 U.S.C. §§ 1691–1709 and regulations thereunder.

the payment of agents' commissions. The basic controverted issue evidently is that of willfulness and intent.

The reference to the need for pretrial and trial purposes of thousands of documents relating to the nineteen transactions appears to be exaggerated; so, too, the assertion that because of complexities of Public Law 480 and of the rules and regulations of the Department of Agriculture relating thereto, the trial will take a month or more, appears exaggerated. If the controverted issues are as posed, the case, assuming a cooperative attitude by counsel, can be streamlined without impairment of the defendants' rights.[3] Indeed, this appears to be a case where Rule 17.1 should be brought into play. And even if counsel should insist, as is the right of his client, upon formal proof of documents, practically all originating with the corporate defendant, the government's estimate of a five or six day trial appears entirely realistic.

The contention that the absence of the individual defendant, the president of the corporate defendant, would seriously disrupt the affairs of the corporation is far from convincing. The fact is that the president travels abroad each year for a period of several months. It is suggested that these are business trips taken when domestic corporate activity is at a low level, and his presence is not then essential. If so, the trial may well be geared to this "low level" period. The defendant is a substantial corporation with sales totalling approximately forty million dollars a year. In the peak period of the year it has the services of 1,000 employees and, of course, those of its other officers and directors. The absence of its president for the duration of the trial and for the necessary preparation for trial can hardly cause disruption or serious interference to so large a corporate enterprise. It is under the managerial direction of its officers and directors; it is not an individual business. The assumption must be that despite the absence of one or two officers who for short periods are unable to function at the corporate site,[4] the corporation will continue to function on a normal basis—certainly it will not come to a grinding halt.[5]

■ The fact that the corporate defendant is a Tennessee corporation, with its principal activities there, is of no significance other than as a factor to be considered with other relevant factors, such as the convenience of officers, personnel, witnesses, counsel, availability of records and expense.[6]

The court, having appraised the facts and contentions urged by the defendants, in the light of the Rule and the applicable standards, finds that a trial in this district would not be so unduly burdensome as to require a transfer. No doubt it would be far more convenient for the defendants and their witnesses that the trial take place in their home district and community; however, it has not been shown that "it is in the interests of justice" to do so.

The motion is denied.

3. See United States v. United States Steel Corp., 233 F.Supp. 154, 159–60 (S.D. N.Y.1964); United States v. Bethlehem Steel Corp., 157 F.Supp. 877, 880 (S.D. N.Y.1958).

4. Assuming this would be so in the instance of the individual defendant. However, a mere absence, of course, does not foreclose his continued and active participation in corporate affairs. Apart from the fact that travel time via plane from the corporate office to this court is three hours, the telephone is still available to permit a president to make or participate in important policy decisions.

5. Cf. United States v. Luros, 243 F.Supp. 160, 174–178 (N.D.Iowa), cert. denied, 382 U.S. 956, 86 S.Ct. 433, 15 L.Ed.2d 361 (1965); United States v. United States Steel Corp., 233 F.Supp. 154 (S. D.N.Y.1964). United States v. Olen, 183 F.Supp. 212 (S.D.N.Y.1960), relied upon by defendants, is readily distinguishable upon its facts. Apart from other distinguishing factors, the court in *Olen* found two defendants to be in "financial straits" and found that others might be rendered "impecunious" if transfer were denied. Defendants herein make no such claim.

6. Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240, 245–246, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964).