**UNITED STATES of America**

v.

**Salvatore CULOSO, a/k/a "Sal Culoso," a/k/a "Sal Caluso," Defendant.**

**No. 78 Cr. 592 (IBC).**

United States District Court,
S. D. New York.

Oct. 31, 1978.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for the United States; Lee S. Richards, Asst. U. S. Atty., New York City, of counsel.

Eaton, Van Winkle, Greenspoon & Grutman, New York City, for defendant; Samuel N. Greenspoon, Gary A. Woodfield, New York City, of counsel.

## OPINION

IRVING BEN COOPER, District Judge.

The indictment herein is under attack; defendant Culoso calls for its dismissal on the ground that it is outlawed by the statute of limitations and/or venue is totally absent. If this is not to be, defendant demands a transfer of venue and a bill of

particulars addressed to two counts (3 and 4). We find impressive merit in the totality of the Government's opposition (set out in its brief) and accordingly we are constrained to and do deny the instant motion in all respects.

### The conspiracy count

We emphasize certain portions thereof decisive of the application now before us. In this count (one), this defendant is charged with unlawfully agreeing with others to defraud the United States of its lawful right to have the Small Business Administration (S.B.A.) administer the provisions of the Small Business Act "fairly and impartially without influence, unlawful inducement, false representations, favor or fraud."

The objectives and means of the conspiracy are clearly set out in the indictment: On or about March 23, 1973, defendant agreed with certain principals of Jordan Metal Products Corporation ("Jordan") that in return for a sum of money, he would procure for Jordan a loan from a bank (whose deposits were insured by the Federal Deposit Insurance Corporation) ninety percent (90%) of which would be guaranteed by the S.B.A.; that Jordan, upon advice of defendant, sought a $350,000 S.B.A. guaranteed loan and "as required by CULOSO said principals did agree to make and did make a $35,000 payment to CULOSO without disclosing the payment to the S.B.A." or the bank.

Further, that following defendant's advice, Jordan temporarily increased its capitalization "to induce the approval of their loan application using approximately $30,000 of their personal funds with assurances from CULOSO that after the loan was approved those principals [of Jordan] could siphon this money back out of Jordan Metal."

And so, on the advice and direction of defendant, Jordan issued checks "made out to businesses to which Jordan Metals owed no money, principals of Jordan Metals made disguised and unreported payments totaling $35,000" to this defendant, and by the same method those principals made such withdrawals from their company "of the money temporarily used to capitalize the company during the pendency of the loan applications" and "drafted false invoices to support the fraudulent checks."

Significant among the overt acts recited in the conspiracy count, it is alleged that defendant advised the President of Jordan that it would be a " 'defalcation' to fail to report the finder's fee on the S.B.A. application and that if any questions about the defendant's role in the transaction were asked the defendant should be identified as solely an insurance broker."

### The substantive counts

The second count in essence charges that defendant aided the application for an S.B.A. guaranteed loan without disclosing either the monies paid or to be paid the defendant or the $30,000 capitalization added to Jordan as hereinabove mentioned; also that defendant advised the issuance of checks by Jordan to payees not owed money by it (see above) which checks were used "to generate cash to pay the defendant CULOSO'S fee and to secretly refund the above-described capitalization."

Count three charges defendant corruptly endeavored to obstruct the proper administration of law under which an S.B.A. proceeding was conducted by "advising a principal of Jordan Metals to misrepresent the full extent of the defendant CULOSO'S services in obtaining the loan and to prepare false and fraudulent checks and invoices some of which were presented to an S.B.A. employee in an interview at Jordan Metals' offices on July 31, 1975."

We come now to count four which charges that defendant by various means endeavored "to obstruct, delay and prevent the communication to a criminal investigator of information relating to a violation of criminal statutes . . . by . . . advising a principal of Jordan Metals to misrepresent the full extent of the defendant CULOSO'S services in obtaining the loan and to prepare false and fraudulent

checks and invoices some of which were presented to an F.B.I. agent pursuant to a subpoena served on Jordan Metals on January 16, 1976."

### The statute of limitations

■ Defendant places a great deal of emphasis on his contention that the prosecution of this indictment in its entirety is time-barred under 18 U.S.C. § 3282 because the loan application which contains the initial false statements was submitted earlier than five years before the filing of the indictment on August 10, 1978. This position must fall because the conspiracy count alleges some overt acts in furtherance of the objectives of the conspiracy which occurred after the filing of the indictment. The statute begins to run, in criminal conspiracy charges, from the date of the last overt act. *United States v. Brasco*, 516 F.2d 816, 818 (2d Cir. 1975); *United States v. Albanese*, 123 F.Supp. 732, 734 (S.D.N.Y. 1954), *aff'd* 224 F.2d 879 (2d Cir.), *cert. denied* 350 U.S. 845, 76 S.Ct. 87, 100 L.Ed. 753 (1955); *United States v. Flynn*, 103 F.Supp. 925, 927 (S.D.N.Y.1951), *aff'd*, 216 F.2d 354 (2d Cir. 1954).

Accordingly, if the pursuit of the objectives of the same conspiracy embraced some overt acts (as alleged) committed within the last five years, the conspiracy count in its entirety stands, for it is not time-barred.

Defendant urges upon us as decisive of his contention the rule in *Grunewald v. United States*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1956).[1] He argues that the conspiracy ended in April, 1973 when the loan application (with vital information bearing on its merits omitted) was filed. Repeated throughout the indictment is the assertion that a crucial objective of the conspiracy was the defendant's status as a "finder" and this in turn was concealed from the agency of the Government. While the concealment was initiated when the loan application was filed, defendant is charged with perpetuating the same concealment long after it was filed. The indictment points this up by reciting as an overt act that defendant received an installment on his fixed "finder's" fee less than five years before the indictment was filed; that defendant advised principals at Jordan Metal to assure others that he was just selling insurance; by counseling such principals to draw false checks and invoices (referred to in the opening of this opinion) for the sole purpose of hiding his "finder's" fee from the S.B.A. and the Grand Jury. The first count makes it plain that the conspiracy to make false statements and conceal material facts culminated in an inspection conducted by an S.B.A. employee and then in the production of documents to the Grand Jury, both of which events occurred well within the last five years.

■ A conspiracy does not come to an end because one of its primary objectives, or even its chief objective, has been achieved. *United States v. Perrone*, 161 F.Supp. 252 (S.D.N.Y.1958). Indeed, the final settling of the conspiracy's financial arrangements "and other acts necessary to complete the operation and consummate the arrangements between [the conspirators]" are as much a part of the conspiracy as the commission of the crime which is its primary object. These basic principles of the law of conspiracy have been followed by this and other Circuits since the *Grunewald* decision. *United States v. Portner*, 462 F.2d 678 (2d Cir.), *cert. denied*, 409 U.S. 983, 93 S.Ct. 319, 34 L.Ed.2d 246 (1972); *United States v. Colasurdo*, 453 F.2d 585, 592 (2d Cir. 1971), *cert. denied*, 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972); *United States v. Nowak*, 448 F.2d 134 (7th Cir. 1971), *cert. denied*, 404 U.S. 1039, 92 S.Ct. 714, 30 L.Ed.2d 731 (1972); *United States v. Hickey*, 360 F.2d 127 (7th Cir.), *cert. denied*, 385 U.S. 928, 87 S.Ct. 284, 17 L.Ed.2d 210

1. In *Grunewald* the Supreme Court ruled that the statute of limitations could not be extended in the case of a conspiracy to improperly obtain "no prosecution" rulings from the Bureau of Internal Revenue by subsequent acts of concealment. The Court ruled that since such acts of concealment were not shown to have been a part of the original criminal agreement they constituted a separate conspiracy.

**132**

(1966); *see Cleaver v. U. S.*, 238 F.2d 766 (10th Cir. 1956).[2]

As set forth in the indictment, the conspiracy from its very inception was an agreement to conceal material facts from federal authorities. The drafting of fraudulent checks and invoices, some prepared before the application and some after, was one important group of acts within that conspiracy. Those checks and invoices were prepared, pursuant to the initial arrangements between the conspirators, for any federal agents (whether or not from the S.B.A.) who might seek evidence of how the loan money was being used by Jordan Metal.[3] For this reason, this case is quite unlike *Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949); *Lutwak v. United States*, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953); and *Grunewald, supra*. In all three cases the objects of the conspiracy at issue—interstate transportation of a woman for immoral purposes; phony marriage ceremonies for the purpose of deceiving United States immigration officials; and obtaining no prosecution rulings in tax cases by bribery—had been entirely achieved before the statements and acts sought to be introduced were made. In each case the efforts to conceal the initial conspiracies were not shown to be an initial part of the conspiracy.

Indeed, *Grunewald* itself recognizes an exception to the rule it announces for just the sort of conspiracy that is charged in this indictment, i. e. a conspiracy in which the "acts of concealment [are] done in furtherance of the *main* criminal objectives of the conspiracy." *Id.* at 405, 77 S.Ct. at 974. In this case, as in *United States v. Colasurdo*, 453 F.2d *supra* at 592

> "the concealment was the essence of the object of the conspiracy—concealment from the [government of the finders' fee and the withdrawal of capitalization] was the very aim of the sham transactions in which the conspirators engaged."

Judge Weinfeld in the case of *United States v. Musoff*, 77 Cr. 895 (S.D.N.Y.1978), has recently recognized the validity of including overt acts of concealment when such concealment is one of the main objectives of the conspiracy. (See court minutes in *Musoff*, pp. 961 to 966.)

### As to count two

■ The "scheme to conceal" there charged includes the false application, the drafting of false checks and invoices, and the presentation of those false documents to S.B.A. and Grand Jury representatives. All these acts (except the filing of the application and the early issued false checks) were done within five years preceding the filing of the indictment.

The structure of 18 U.S.C. § 1001 makes it plain that participation in a scheme to conceal material facts from the government, quite apart from the affirmative misstatement of facts, is a crime. The text of § 1001 specifically provides for prosecution of such schemes in a clause separate from the clause which describes the offense of affirmative false statements. Unless the language of the former clause is to be regarded as mere surplusage, § 1001 must be understood as providing for the prosecution of schemes such as the one described in this

---

**2.** Some of these cases involved issues concerning the admission of co-conspirator's hearsay. Their holdings are, nevertheless, apposite because the basic question *sub judice* in each was the extent and duration of the conspiracy.

It is also worth noting that many of these opinions declare that the division of the proceeds of the crime is always an overt act in a conspiracy. *See United States v. Knuckles*, 581 F.2d 305, 313 (2d Cir., 1978); *United States v. Manarite*, 448 F.2d 583, 591 (2d Cir.), *cert. denied*, 404 U.S. 947, 92 S.Ct. 281, 30 L.Ed.2d 264 (1971); *United States v. Bermudez*, 526 F.2d 89, 96 (2d Cir. 1975). If that is true it is

surely true that the last installment on Culoso's finder's fee (which occurred on August 27, 1973) was an overt act in furtherance of the conspiracy within the limitary period.

**3.** Defendant's contentions that the meetings and payments described in the overt acts occurred "years after the submission of the allegedly ficticious [sic] false statements" (Defendant's Brief at p. 3) and that they "have no relation" to and "nothing to do with" the core of this criminal conspiracy (Defendant's Brief pp. 3, 7) are belied by the clear language of the indictment.

count. *See United States v. London*, 550 F.2d 206 (5th Cir. 1977);[4] *United States v. Diogo*, 320 F.2d 898, 902 (2d Cir. 1963) (in which the Court explicitly recognized that § 1001 "encompasses within its proscription two distinct offenses, concealment of a material fact and false representations" and "[w]hat must be proved to establish each offense however differs significantly")[5]; *United States v. Steiner Plastics Mfg. Co.*, 231 F.2d 149 (2d Cir. 1956); *Harrison v. U. S.*, 279 F.2d 19 (5th Cir. 1960); *United States v. Kenny*, 236 F.2d 128 (3rd Cir. 1956); *Bramblett v. U. S.*, 97 U.S.App.D.C. 330, 231 F.2d 489, *cert. denied*, 350 U.S. 1015, 76 S.Ct. 658, 100 L.Ed. 874 (1956).[6]

Of course, as in this case, schemes to conceal often include specific affirmative misstatements of fact, e. g. the false application and the presentation of fraudulent checks to S.B.A. and grand jury representatives. *See United States v. Markham*, 537 F.2d 187 (5th Cir. 1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977) (where the Court noted that "[c]oncealment and falsity were bound together in the context" of that case).[7]

---

**4.** In *London*, defendants, loan officers for the FHA, were charged with concealing or covering up by trick, scheme or device the fact that they were arranging second mortgages on property securing FHA loans in violation of the FHA mortgage agreement. Defendants challenged the sufficiency of the indictment because it failed to indicate the precise trick, scheme or device employed.

Called upon to interpret the meaning of the concealment language of § 1001, the Court reasoned that the "trick, scheme or device" language could not be surplusage merely illustrating some hypothetical means of concealment. If it were surplusage, the inclusion of "falsifies" in the first part of the statute would be redundant because there would be nothing to distinguish it from the making of false statements or representations under the second portion of the statute. Therefore, the Court held that full effect must be given to the "trick, scheme or device" language of the statute. The Court concluded that a violation of the statute might be proved at trial.

> "If, for example, the appellees induced the purchasers of their homes to make false statements regarding material facts in applications for Rural Housing loans, *and appellees independently sought to prevent the government from finding out the falsity of such statements* . . . the jury might find that such conduct constituted a trick, scheme or device."

550 F.2d at 213 [emphasis added].

**5.** In *Diogo* the Second Circuit reversed for failure to allege the language present in Count One of this indictment, i. e. the scheme to conceal language.

**6.** In *Bramblett*, the defendant, a member of Congress, submitted to the Disbursing Office of the House of Representatives a fraudulent "Clerk Hire Allowance Form" and thereby received compensation for a fictitious employee for seven months. The government charged defendant with seven separate counts of falsification. Defendant contended that prosecution was barred by the statute of limitations because his crime was complete when he made the false filing. The court agreed with defendant that he could not be convicted on seven counts of falsification, but held that he could be convicted on one count of falsifying by a continuing scheme: "A continuing crime of falsification by a scheme is . . . charged and proved, and *the period of limitations did not begin to run until the scheme ended.*" (Emphasis added) 231 F.2d at 491. The court further stated that "the portion of the statute upon which the indictment rests we think does reveal a Congressional intent to reach a pattern of conduct rather than to penalize a series of acts which manifest the pattern." 231 F.2d at 491.

Defendant's claim that this case is distinguishable because the scheme charged here was complete at the time of the application obviously springs from a failure to read the allegations of the indictment and match them against those in *Bramblett*. In addition, the opinion in *Bramblett* quite clearly demonstrates the inapplicability of *Marzani v. United States*, 83 U.S.App.D.C. 78, 168 F.2d 133 (D.C.Cir.), *aff'd*, 335 U.S. 895, 69 S.Ct. 299, 93 L.Ed. 431 (1948), on which Defendant relies. In *Marzani*, the Government charged only affirmative false statements which were made earlier than the applicable limitary statute. There was no claim of a conspiracy or a scheme; rather, the issue was whether or not the statute of limitations was tolled by the Suspension Act.

**7.** In this regard, Defendant's citation of *United States v. Davis*, 533 F.2d 921 (5th Cir. 1976) is surprisingly inconsistent with his apparent claim that the difference in draftsmanship between the various provisions of § 1001 has no direct statute of limitations consequences. In that case, the Court clearly held that the indictment was defective under the statute of limitations because the Government had charged *only* a conspiracy to violate § 1001 by making false statements. Had the Government charged a conspiracy to defraud the United States and/or a scheme to conceal (as it has

It is clear that the life of the scheme charged in Count Two extended past 1975. Accordingly, the prosecution of that scheme is not time-barred. If the defendant and his co-conspirators had not taken affirmative steps in the conspiracy after the application, or had they not continued to pay the defendant his finder's fee and manipulate the capitalization, or had they not presented false and fraudulent documents to federal agents to cover-up these actions, the statute of limitations would bar prosecution and dismissal would be warranted. But they carried on their initial agreement to conceal facts from the government into 1976. For these and other reasons, the first two counts of the indictment clearly charge on their face continuing offenses that are not time-barred. *See United States v. Sloan*, 389 F.Supp. 526 (S.D.N.Y.1975).[8]

### As to counts three and four

The obstruction of S.B.A. proceedings in 1975 and grand jury proceedings in 1976, as charged, constitute acts unaffected by the statute of limitations.

■ Since the acts of his co-conspirators are chargeable against defendant under *United States v. Geaney*, 417 F.2d 1116 (2d Cir. 1969), *cert. denied*, 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970); *United*

States v. Brasco, supra, 516 F.2d at 818, defendant's request for a bill of particulars outlining his acts is irrelevant to his motion to dismiss (possibly an effort to discover the Government's evidence).[9] The language of the indictment alone clearly demonstrates that the acts charged fall within the statute of limitations. Further, at a recent conference (after the motion was returnable) held by us, counsel for defendant readily agreed that Assistant United States Attorney Richards was cooperative in opening up the Government's file for inspection, even showing documents the Government planned to omit at trial. We have long encouraged such an approach at fair dealing.

### As to venue

Relying almost exclusively on the case of *United States v. Flaxman*, 304 F.Supp. 1301 (S.D.N.Y.1969), defendant argues that the indictment should be dismissed for lack of venue or, in the alternative, that venue should be transferred to the Eastern District of New York pursuant to Rule 21(b), Fed.R.Crim.P. Neither motion has merit.

■ The indictment clearly states that the application for the S.B.A. guaranteed loan in question was submitted to the Man-

here) there would have been no grounds for dismissal. *Id.* at 927–8. The teaching of *Davis* is that in cases involving § 1001 draftsmanship has important consequences.

8. In *Sloan* Judge Knapp ruled that an indictment was defective because the defendants took no affirmative steps in their scheme within the period of five years before the indictment was filed. There the defendants did nothing within the five year limitary period except maintain records that were false and had been false for over five years. Here, the indictment charges a number of "affirmative" acts which the conspirators took within the limitary period and which were part of the originally conceived scheme.

9. The purpose of a bill of particulars is to acquaint the defendant with the nature of the charges against him, not to give him a preview of the evidence or theory of the Government's case. *United States v. Mitchell*, 73 Cr. 439 (S.D.N.Y. August 3, 1973); *United States v. McCarthy*, 292 F.Supp. 937 (S.D.N.Y.1968); *United States v. Brevard*, 27 F.R.D. 250 (S.D.N.

Y.1961); *United States v. Malinsky*, 19 F.R.D. 426, 428 (S.D.N.Y.1956); *see United States v. Lebron*, 222 F.2d 531, 535–6 (2d Cir.), *cert. denied*, 350 U.S. 876, 76 S.Ct. 121, 100 L.Ed. 774 (1955); *United States v. Klein*, 124 F.Supp. 476 (S.D.N.Y.1954), *aff'd*, 247 F.2d 908 (2d Cir. 1957), *cert. denied*, 355 U.S. 924, 78 S.Ct. 365, 2 L.Ed.2d 354 (1958). Bills of particulars are not justified where the only purpose they would serve would be to limit the government's proof or allow the defendant to tailor his testimony to meet the Government's evidence. *United States v. Glaze*, 313 F.2d 757, 759 (2d Cir. 1963); *United States v. Murray*, 297 F.2d 812 (2d Cir.), *cert. denied*, 369 U.S. 828, 82 S.Ct. 845, 7 L.Ed.2d 794 (1962); *United States v. Cimino*, 31 F.R.D. 277 (S.D.N.Y.1962). Surely, it is clear under the *Geaney* rules of co-conspirator liability that the bill of particulars Defendant seeks would not serve the purpose for which he claims to seek it (i. e. in order to decide whether to move to dismiss the last two counts on the basis of the statute of limitations).

hattan offices of the S.B.A. On the basis of that submission alone (without proof of any other activity in this District) venue in Counts One and Two is proper.

18 U.S.C. § 3237, the "continuing offense" statute, provides:

". . . any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued or completed."

Under this statute, alleged violations of 18 U.S.C. § 1001 may be prosecuted in either the district in which the false statement was prepared and mailed *or* in the district in which the offense was completed, i. e., where the federal agency receives and acts upon the statement. *United States v. Candella,* 487 F.2d 1223, 1228 (2d Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1563, 39 L.Ed.2d 872 (1974); *See United States v. Miller,* 246 F.2d 486 (2d Cir.) *cert. denied,* 355 U.S. 905, 78 S.Ct. 332, 2 L.Ed.2d 261 (1957); *De Rosier v. United States,* 218 F.2d 420 (5th Cir. 1955); *United States v. Williams,* 437 F.Supp. 1047, 1050 (W.D.N.Y. 1977); *United States v. Chestnut,* 399 F.Supp. 1292, 1297 & n. 23 (S.D.N.Y.1975), *aff'd,* 533 F.2d 40 (2d Cir. 1976), *cert. denied* 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 93 (1977).

In *Candella,* the defendant prepared and handed to officials of the Office of Relocation of the City of New York in Brooklyn affidavits and bills of lading containing false statements in violation of 18 U.S.C. §§ 1001 and 2. The documents were then forwarded to and processed by the federal Housing and Urban Development Office in Manhattan. The Court held that venue was properly laid in the Southern District under 18 U.S.C. § 3237(a). It reasoned that although "enough was done in the Eastern District to constitute a crime," the offense had not terminated there and the defendants could contemplate that their actions would lead to the decision to disburse funds, in Manhattan.

The Court in *De Rosier v. United States, supra,* where a defendant prepared and mailed a fraudulent letter from the Southern District of Florida to the Loyalty Board in Washington, D.C., held that the offense was "indictable either at the place of its beginning or at the place of its completion." 218 F.2d at 423. That decision was followed in *United States v. Miller, supra.*

Most recently, in *United States v. Williams,* 437 F.Supp. 1047, 1050 (W.D.N.Y. 1977), it was held that where false statements to a bank were prepared, executed and mailed in and from the Eastern District of Oklahoma to a bank in the Western District of New York, venue would be proper in both districts as provided by § 3237, since the alleged offenses "were commenced in Oklahoma and completed upon receipt of the false statements by the bank," 437 F.Supp. at 1050.

In addition, both of the first two Counts include the acts charged in Counts Three and Four which have a clear nexus to this District. Those last two counts charge an obstruction of S.B.A. and Grand Jury proceedings, respectively. As indicated in the indictment, the S.B.A. proceedings in question originated out of the Manhattan S.B.A. office, and the Grand Jury that issued the subpoena referred to in count four was sitting in Manhattan. For the reasons stated in *United States v. O'Donnell,* 510 F.2d 1190 (6th Cir.), *cert. denied,* 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975) [10] these facts clearly establish venue in this District. *See also Travis v. United States,* 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961); *In re Palister,* 136 U.S. 257 (1890); *United States v. Floyd,* 228 F.2d 913 (7th Cir.), *cert. denied,* 351 U.S. 938, 76 S.Ct. 835, 100 L.Ed. 1466 (1956); *United States v. Elliot,* 446 F.Supp. 209 (W.D.Va.1978). Obviously, venue in this District on these last two

---

**10.** Also for the reasons stated in *O'Donnell,* we think the case of *United States v. Swann,* 142 U.S.App.D.C. 363, 441 F.2d 1033 (1971) is wrongly decided. It should also be noted that *O'Donnell* was a case brought under 18 U.S.C. § 1503. However, it is clear that this fact is not a persuasive basis for distinguishing *O'Donnell.*

counts is also consistent with the principles supporting *Candella, supra.*

The *Flaxman* decision is clearly distinguishable. Not only was that decision rendered well before *Candella*, but there venue in this District was based upon an improper submission to a governmental office here. The application in *Flaxman* should have been submitted to and processed by a Brooklyn office. In fact submission to the Manhattan office actually violated the agency's regulations. There is no such claim of improper submission made in this case.

Defendant's motion to transfer venue to the Eastern District of New York is equally meritless. The motion, which is addressed to the Court's discretion,[11] is based on Rule 21(b), Fed.R.Crim.P., which provides in pertinent part that:

> "For the convenience of parties and witnesses, and in the interests of justice, the court upon motion of the defendant may transfer the proceeding as to him or any one or more of the counts thereof to another district."

The *complete* set of factors most often recognized as those applicable to the decision on a motion to transfer venue are: "(1) location of . . . defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer." *Platt v. Minnesota Mining Co.*, 376 U.S. 240, 243–4, 84 S.Ct. 769, 771, 11 L.Ed.2d 674 (1964).

We are advised that the Government's witnesses and documents will be present in this District. Defendant has failed to suggest any witness he contemplates calling who would be so greatly inconvenienced by the trial here that venue should be transferred. Neither has he in any way shown that large numbers of documents not already in the Government's offices in Manhattan will be presented at trial. Moreover, inconvenience to the defendant or his business is not, by itself, a sufficient basis for transfer.[12] *Wagner v. United States*, 416 F.2d 558, 562 (9th Cir. 1969), *cert. denied*, 397 U.S. 923, 90 S.Ct. 915, 25 L.Ed.2d 104 (1970); *United States v. Williams, supra*, 437 F.Supp. at 1051; *United States v. Austin Company*, 273 F.Supp. 360, 362 (S.D.N.Y.1967); *United States v. Ray*, 234 F.Supp. 371 (D.D.C.1964); *United States v. United States Steel Corp.*, 233 F.Supp. 154 (S.D.N.Y.1964).

As most frequent with us, we return here again to Judge Weinfeld who has described the general approach to motions such as these in *United States v. United States Steel Corp., supra*, 233 F.Supp. at 157:

> At the outset it must be recognized that every litigation, particularly a criminal prosecution, imposes burdens upon a defendant and brings in its wake dislocation from normal occupational and personal activities. The burdens imposed and inconvenience suffered vary from case to case and from defendant to defendant within a case; it is a matter of degree depending upon a variety of circumstances. In this respect this case is no different from any other. The Court is satisfied that no matter where this trial is conducted, there will be inconvenience to the parties, their executives, their counsel and their witnesses. But mere inconven-

---

11. *United States v. Connelly*, 405 F.Supp. 735 (S.D.N.Y.1975); *United States v. United States Steel Corp.*, 233 F.Supp. 154 (S.D.N.Y.1964).

12. In addition, it is clear that it is not the fact or size of any expense the defendant may incur as a result of trial in this District but rather his ability to bear the expense that concerns the Courts. *United States v. Luros*, 243 F.Supp. 160 (N.D.Iowa), *cert. denied*, 382 U.S. 956, 86 S.Ct. 433, 15 L.Ed.2d 361 (1965). Here again the Defendant has failed to make any showing that trial should not be had in this District and, in any event, it is hard to imagine that the difference in distance between the two Districts constitutes a significant burden on the Defendant.

ience, interference with one's routine occupational and personal activities, and other incidental burdens which normally follow when one is called upon to resist a serious charge do not ipso facto make the necessary showing that a transfer is required in the interest of justice. As a general rule a criminal prosecution should be retained in the original district. To warrant a transfer from the district where an indictment was properly returned it should appear that a trial there would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome; and, necessarily, any such determination must take into account any countervailing considerations which may militate against removal.

The standard set out in *United States Steel Corp.* was expanded in *United States v. Jones*, 43 F.R.D. 511, 514 (D.D.C.), *mandamus denied, Jones v. Gasch*, 131 U.S.App. D.C. 254, 404 F.2d 1231 (1967), *cert. denied*, 390 U.S. 1029, 88 S.Ct. 1414, 20 L.Ed.2d 286 (1968):

> ". . . sound judicial administration and the need for efficient handling of the prosecuting attorney's work load suggest that only rarely and for good cause should a prosecution be withdrawn by a judicial act from the court in which it was brought . . ." 43 F.R.D. at 514.

In *Jones* the Court noted that it is not sufficient to make the bare assertion that a large number of defense witnesses from out of the District are needed at trial. *Id.* at 511. *See also Lindberg v. United States*, 363 F.2d 438 (9th Cir. 1966).

The affidavit of Assistant United States Attorney Richards (submitted on the motion) indicates that of the witnesses the Government currently intends to call only three currently reside in Long Island, at least two reside or work in Manhattan and two reside in Florida; all of the Govern-ment's exhibits are or will shortly be stored only minutes from the courthouse; the trial is likely to take less than two weeks.[13] No claim of a difference in court congestion between the proposed transferor and transferee Districts has been made. Counsel for both sides are located in Manhattan.

On the basis of these facts and in the absence of any showing by defendant to support his motion (aside from his location and the location of some of the events described in the indictment), the motion to transfer venue must be denied. The defendant has failed to show that the "substantial balance of convenience" requires such a transfer. *See Wagner v. United States, supra*, 416 F.2d at 562; *United States v. Pilnick*, 267 F.Supp. 791, 797 (S.D. N.Y.1967).[14]

The application is denied in all respects, with leave to renew appropriate portions thereof addressed to the proof adduced at trial.

SO ORDERED.

---

**13.** See *United States v. Austin Company, supra,* 273 F.Supp. at 362.

**14.** There is also a serious question about whether venue is even proper in the Eastern District of New York under 18 U.S.C. § 3237(a). *United States v. Lombardo*, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897 (1916); *United States v. Chestnut, supra,* 399 F.Supp. at 1297 & n. 24. These and other cases indicate by analogy that venue is only proper where the jurisdictional filing is made and the S.B.A. continued to process the loan.