UNITED STATES of America,

v.

Webster L. HUBBELL, Defendant.

Crim. Action No. 98–0394 (JR).

United States District Court,
District of Columbia.

March 18, 1999.

John Whitelaw Nields, Jr., Laura Scott Shores, Howrey & Simon, Washington, DC, Mark Edward Matthews, Peter Romatowski, Stephen M. Byers, Crowell & Morning, L.L.P., Washington, DC, for Webster L. Hubbell.

Julie A. Corcoran, Kenneth W. Starr, Jay Apperson, Eric Dreiband, Tim Susannin, Office of Independent Counsel, Washington, DC, for U.S.

### MEMORANDUM

ROBERTSON, District Judge.

This memorandum and the accompanying order deal with four pretrial motions in this, the third criminal prosecution brought by Independent Counsel Kenneth Starr against Webster Hubbell. Here is a brief version of the allegations of the indictment: In 1985 and 1986, acting as a lawyer, Hubbell helped his father-in-law Seth Ward to undo or conceal a shady transaction with Madison Guaranty Savings & Loan Association in order to avoid its detection during an audit by the Federal Home Loan Bank Board. From 1989 to 1991, Hubbell lied to the RTC and the FDIC about his representation of Seth Ward in order to get and keep the FDIC's legal business for the Rose Law Firm. From 1993 to 1995, Hubbell lied to federal investigators about these events.

These allegations are set forth in 85 paragraphs and repeated—incorporated by reference—in fifteen separate counts charging six legal variations upon the same theme: a scheme to conceal material facts from agents of the government in violation of 18 U.S.C. § 1001 (Count 1);

corrupting the work of the FDIC and the RTC in violation of 18 U.S.C. § 1032(2) (Count 2); fraud upon the FDIC and the RTC in violation of 18 U.S.C. § 1006 (Count 3); specific false statements made on specific days to specific agencies in violation of 18 U.S.C. §§ 1001 and 1007 (Counts 4–9); a perjurious answer to a single question in a Congressional hearing in violation of 18 U.S.C. § 1621 (Count 10); and a mail fraud scheme with five specific mailings in violation of 18 U.S.C. §§ 1341 and 1346 (Counts 11–15).

Now under consideration are a motion to dismiss Count 1, the "scheme" charge, for impermissible vagueness, and to require election among multiplicitous counts [# 11]; a motion to dismiss Count 10, the perjury charge, on the grounds that the charged statement was "fundamentally ambiguous" and taken out of context [# 10]; a motion to dismiss Counts 1, 2, and 4 through 10, charging scheme, impeding the functions of the FDIC and RTC, false statements to the FDIC and RTC, and perjury, asserting that those charges are barred by informal transactional immunity [# 8]; and a motion for a bill of particulars [# 9].[1]

For the reasons set forth below, the motion to dismiss Count 1 for vagueness [# 11] must be granted. The other motions will be denied.

### Motion to dismiss Count 1 for impermissible vagueness and to require election among multiplicitous counts

Under 18 U.S.C. § 1001, "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statements or representations; or (3) makes or uses any false writing or document knowing the same to contain any materially

---

1. Two other defense motions to dismiss, on grounds of statutory immunity [# 12] and pre- indictment delay [# 13] are under consideration.

false, fictitious, or fraudulent statement or entry; shall be fined under this title or imprisoned not more than 5 years, or both." It is well settled that criminal indictments in general and indictments under § 1001 in particular must be specific enough to permit the person charged to prepare a defense and to avoid double jeopardy. *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) ("an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense"); Fed. R.Crim.P. 7(c)(1) (indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged").

■ Count 1 alleges many different and complex relationships between and among defendant Hubbell, the Rose Law Firm, a lawyer at the Rose Firm referred to only as "the 1985–1986 billing partner," Seth Ward, Madison Guaranty, Madison Financial, and a series of real estate transactions known as the "IDC/Castle Grande" transactions. The 85 paragraphs that are incorporated by reference in Count I allege many false statements and acts of concealment. The charging language of Count 1, however, alleges no specific act or acts of concealment by "trick, scheme or device" and no specific "false, fictitious, or fraudulent statements or representations." It is *nonspecific.* It alleges, at ¶ 87, only that

"From in or about March 1989 until on or about December 27, 1995, in the District of the District of Columbia, and elsewhere, Defendant . . . did knowingly and willingly falsify, conceal, cover up by scheme material facts about and related to the true nature of Defendant WEBSTER L. HUBBELL's, the Rose Firm's, and the 1985–1986 billing partner's relationships to and with Seth Ward, Madison Guaranty, Madison Financial, and the IDC/Castle Grande

transactions, and he did make materially false and fraudulent statements and representations to the FDIC and RTC about the true nature of Defendant WEBSTER L. HUBBELL's, the Rose Firm's, and the 1985–1986 billing partner's relationships to and with Seth Ward, Madison Guaranty, Madison Financial, and the IDC/Castle Grande transactions. All in violation of Title 18, United States Code, Section 1001."

Hubbell argues that Count 1 is a "catch all" count that fails to inform him clearly of the "precise offense of which he is accused so that he may prepare his defense." *United States v. Conlon,* 628 F.2d 150, 156 (D.C.Cir.1980). He points out reasonably that a jury might convict if it unanimously accepted the generality of the charge of "scheming," although split on which (if any) of the many acts alleged in paragraphs 1 through 85 Hubbell actually committed. He argues that such a verdict would violate his constitutional guarantee of due process of law.

The OIC maintains that Count 1 is sufficiently specific but relies most heavily on its fallback argument that *it is not necessary for Count 1 to set forth precisely the false statements and acts of concealment upon which it depends,* because 18 U.S.C. § 1001 is a "scheme crime," and because it is the scheme—rather than the specific act—which is the gravamen of the offense.

The OIC asserts that this argument is supported by three cases. None of them is controlling authority for the position OIC has taken, and I have not found them persuasive.

In *Bramblett v. United States,* 231 F.2d 489 (D.C.Cir.1956), a Congressman falsely stated to the House Disbursement Office that he employed a clerk and then collected seven monthly paychecks intended for the clerk. He was indicted and convicted on seven counts of violating 18 U.S.C. § 1001, one count for each paycheck. The issue on appeal was whether the then-applicable three-year statute of limitations

for 18 U.S.C. § 1001 should have barred the prosecution because the defendant's act of designating the employee was done more than three years before the indictment was returned. The court, per Fahy, J., held that the prosecution was not time-barred because the Congressman collected the checks within the three-year window. *Bramblett*'s holding deals with the statute of limitations in a § 1001 case charging the concealment of a material fact by trick, scheme, or device, and not with the question of whether the scheme itself may be punished. Judge Fahy's suggestion that § 1001 punishes a "pattern of conduct" is dictum.

In *United States v. Heacock*, 31 F.3d 249 (5th Cir.1994), defendant was convicted under § 1001 of "a scheme to conceal from the IRS in sixteen different ways the nature and extent of his bookmaking operation" over a 12–year period. *Heacock* at 251. The appellant in *Heacock* apparently *did not object* to being charged with a scheme under 18 U.S.C. § 1001, and the question of whether § 1001 penalizes the scheme itself or an act done by trick, scheme, or device is nowhere discussed in the Fifth Circuit's opinion. The *Heacock* decision instead deals with (and rejects) defendant's contention that the trial court should have suppressed evidence that was obtained more than five years before the indictment was brought. The court observed that "the statute of limitations does not begin to run on a 'scheme' crime ... until each overt act constituting the scheme has occurred, because the case cannot be brought and proved until that time." *Heacock* at 256. This use of the term "scheme crime" obviously refers to a crime, one of whose elements is a scheme, and not a crime whose gravamen is a scheme.

In *United States v. Culoso*, 461 F.Supp. 128 (S.D.N.Y.1978), defendant was charged with conspiracy, and with a scheme to defraud the Small Business Administration by applying for a false loan, drafting false checks and invoices, and presenting those false documents to the Small Business Administration and a grand jury. What the district court did in *Culoso* was overrule a motion to dismiss brought on statute of limitations grounds. The court's discussion of schemes and § 1001, 461 F.Supp. at 132–33, is also dicta, and it has clearly been misunderstood by the OIC. It is quoted here in its full context:

> The "scheme to conceal" ... charged [in Count Two] includes the false application, the drafting of false checks and invoices, and the presentation of those false documents to S.B.A. and Grand Jury representatives. All these acts (except the filing of the application and the early issued false checks) were done within five years preceding the filing of the indictment.
>
> *The structure of 18 U.S.C. § 1001 makes it plain that participation in a scheme to Conceal material facts from the quite apart from the affirmative misstatement of facts, is a crime.* The text of § 1001 specifically provides for prosecution of such schemes in a clause separate from the clause which describes the offense of affirmative false statements. Unless the language of the former clause is to be regarded as mere surplusage, § 1001 must be understood as providing for the prosecution of schemes such as the one described in this count. *See United States v. London*, 550 F.2d 206 (5th Cir.1977); *United States v. Diogo*, 320 F.2d 898, 902 (2d Cir.1963) (in which the Court explicitly recognized that § 1001 "encompasses within its proscription two distinct offenses, concealment of a material fact and false representations" and "(w)hat must be proved to establish each offense however differs significantly"); *United States v. Steiner Plastics Mfg. Co.*, 231 F.2d 149 (2d Cir.1956); *Harrison v. U.S.*, 279 F.2d 19 (5th Cir.1960); *United States v. Kenny*, 236 F.2d 128 (3rd Cir. 1956); *Bramblett v. U.S.*, 97 U.S.App. D.C. 330, 231 F.2d 489, *cert. denied,* 350

U.S. 1015, 76 S.Ct. 658, 100 L.Ed. 874 (1956) (Footnotes omitted).

The language underscored in this passage clearly means, not that § 1001 penalizes schemes *qua* schemes, but rather that the crime of falsifying by trick, scheme, or device (clause (1) of § 1001) is different from the crime of making a false statement (clause (2) of § 1001). Any doubt about that reading is dispelled by referring to the case on which Judge Cooper principally relies, *United States v. London.* In that case, the defendant was charged with fourteen separate counts of concealment by trick, scheme, or device. The fourteen counts "identif[ied] the material facts concealed, the government agency involved, the transactions to which the facts were material, the dates of the transactions, and all participants in those transactions," *London,* 550 F.2d at 208, but did not specify exactly what the scheme was. The Fifth Circuit's holding is that the "trick, scheme, or device" language in the first clause of § 1001 is not surplusage and that it spells out a distinct element of the crime that must be proven. As Judge Goldberg explains, 550 F.2d at 212:

> "This construction of the statute is supported by policy considerations. In construing a statute that will often come dangerously close to trenching on fifth amendment rights, one ought not punish concealments or false statements that fall short of constituting affirmative acts."

Nor, it might be added, ought one punish "schemes" in the abstract.

The only "scheme crime" known to this Court that outlaws the scheme itself is conspiracy, which "poses distinct dangers quite apart from those of the substantive offense." *Iannelli v. United States,* 420 U.S. 770, 778, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). *Callanan v. United States,* 364 U.S. 587, 593–94, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961); *United States v. Escobar de Bright,* 742 F.2d 1196, 1199–1200 (9th Cir. 1984). Mail fraud is a "scheme crime" whose first *element* is the establishment of a scheme, but what it penalizes is the specific act of mailing. *See* 18 U.S.C. § 1346. It is not schemes that are punished by § 1001 but specific acts of falsification by trick, scheme, or device. Where, as here, those affirmative acts are not charged specifically enough to "fairly inform[ ] a defendant of the charge against which he must defend," *Hamling,* 418 U.S. at 117, 94 S.Ct. 2887, the charges are insufficient and must be dismissed.

█ Because Count 1 will be dismissed, it is unnecessary to decide whether it is multiplicitous of Counts 4–9. The remaining argument of this motion—that Counts 4–9 are multiplicitous of one another—is rejected. Those counts charge Hubbell with lying to the FDIC or RTC on various dates between September 29, 1993, and December 27, 1995.

> "The appropriate test [for determining multiplicity] is this: each count must set forth a separate lie or false statement, and in cases where the facts present a close question of whether separate lies exist, it is relevant to inquire into the degree to which the second statement impaired the body before which it was made."

*United States v. Clarridge,* 811 F.Supp. 697, 703 (D.D.C.1992). The OIC has undertaken to prove that each false statement constituted an additional impairment of government because each was made on a separate day to different government agents and employees, "each with distinct duties and functions," *United States v. Salas–Camacho,* 859 F.2d 788, 791 (9th Cir. 1988). If such proof is adduced at trial, Counts 4–9 will be shown not to be multiplicitous of one another, and the government will not be required to elect among them.

### Motion to dismiss Count 10 for charging as perjury an ambiguous statement taken out of context

The indictment alleges, at ¶ 105, that during an investigation of the Madison

Guaranty Savings & Loan Association by the House Banking Committee in August 1995, Congressman Chrysler asked this question, and Hubbell gave this answer:

Q: Did you later find out that Rose had represented Madison Guaranty on a number of prior occasions in which [the 1985–1986 billing partner] was the billing partner?

A: I believe I said, Congressman, that I was aware—*I was not aware oft the nature of the matters*, but aware that the firm had represented Madison in 1985 and 1986 and aware that [the 1985–1986 billing partner] was the billing attorney. I did not consider that a conflict because we were standing in the shoes of Madison in suing its former accountants. (Emphasis added.)

The indictment further alleges, *id.*, that the emphasized portion of the defendant's answer was perjurious because defendant "knew and was aware of the nature of the matters in which Rose represented Madison Guaranty, including the legal work that the Rose Firm had performed for Seth Ward, Madison Guaranty, and Madison Financial in 1985 and 1986 on the IDC/Castle Grande matter." Defendant's motion asserts that Count 10 must be dismissed because the phrase "the nature of the matters" is fundamentally ambiguous, and not objectively true or false, and because the indictment distorts the answer by lifting it out of context.

 A statement that is ambiguous or imprecise is not subject to verification and cannot be proven false. *See, e.g., United States v. Lattimore*, 215 F.2d 847, 849 (D.C.Cir.1954) (perjury charge based on statement that defendant "had never been a sympathizer or any other kind of promoter of Communism" dismissed because the word "sympathizer" was too vague). The charged statement in this case, however, is not ambiguous. Its natural and clear meaning is that the defendant knew that his former law firm had represented Madison, but that he did not know *what the*

*work was about.*[2] If defendant knew details of the Rose Law Firm's representation of Madison Guaranty, his statement to Congressman Chrysler was false.

As for defendant's contextual argument, it would indeed be unfair to " 'lift [ ] a statement of the accused out of its immediate context and thus giv[e] it a meaning wholly different than that which its context clearly shows.' " *United States v. Tonelli*, 577 F.2d 194, 198 (3d Cir.1978) (citation omitted). In *Tonelli*, the prosecutor asked defendant whether he "participated in placement of pension fund monies for the purchase of certificates of deposit." Defendant said no. The prosecutor then went on to define "participate" to include "making recommendations." Defendant then said, yes, he had made recommendations that others buy the certificates. He was convicted for making a false statement in his initial denial. The prosecutor in *Tonelli* made an arguably truthful answer seem perjurious by changing the context. No such trap was laid here, and defendant's complaint about context does not succeed.

Issues do arise from the context of the defendant's statement that will need to be resolved at some point: Was the statement willfully false? Was the statement material within its context? These are serious issues, especially in view of the apparently off-hand nature of the allegedly perjurious statement, Congressman Chrysler's lack of interest in the answer, and his failure to pin the witness down to the specific object of the questioner's inquiry, *see Bronston v. United States*, 409 U.S. 352, 359–60, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973). Those questions are not implicated by the present motion, however, and, if the government's case-in-chief survives a Rule 29 motion, they are for the jury.

### Motion to dismiss Counts 1, 2, and 4–10 based on informal transactional immunity

At defendant's grand jury appearance on December 19, 1995, Associate Independent Counsel W. Hickman Ewing told him:

2. Defense counsel has offered no alternative interpretation of the statement in question.

"I know you have, as you know, spent a lot of hours with various lawyers in the Independent Counsel's Office and agents, not only in Arkansas, but in Washington, D.C. . . . as people give what they believe happened, and some of this stuff happened a long time ago, sometimes they don't get it right. And perhaps with the passage of time, their memories are refreshed or they remember something differently. . . .

[J]ust because you've said something before and you remember it differently now, don't be stuck on the proposition that, 'Well, on February 1st of 1995, I told [Associate Independent Counsel] Amy St. Eve something. And I know it's different now, but I don't want to change it.' *So today is what really counts, as far as being under oath.*" (Emphasis added).

Defendant asserts that these remarks gave him immunity from prosecution for or on account of any and all false statements he had made—or was yet to make—to the Office of the Independent Counsel, to investigators from the FDIC and the RTC, and to the House Banking Committee. Defendant's argument, essentially, is that Ewing's remarks must be construed liberally and in the defendant's favor, and that, so construed, they amount to a promise "not [to] indict him for earlier inconsistent statements given on the same subjects." Def.Mot. at 3.

■ Informal grants of immunity by prosecutors have the tacit approval of our Court of Appeals, *see United States v. Friedrick*, 842 F.2d 382, 393 n. 14 (D.C.Cir.1988). Normally "[i]nformal or 'pocket' immunity arises by way of assurances by prosecutors . . . to a potential grand jury witness that he will be immune from any prosecution based on his testimony," but informal immunity may also be transactional, *i.e.*, "complete immunity from prosecution relating to the subjects addressed" in testimony or an interview, *id.* (emphasis added).

■ It appears to be settled law, although there is no Court of Appeals decision on point in this Circuit, that grants of immunity are to be analyzed and enforced according to the law of contracts, *see United States v. Black*, 776 F.2d 1321, 1326 (6th Cir.1985); *United States v. Irvine*, 756 F.2d 708, 710 (9th Cir.1985) (per curiam); *In re Federal Grand Jury Proceedings*, Misc. No. 98–59, slip. op. at 12 (D.D.C. May 1, 1998), *appeal dismissed sub nom., In re Sealed Case*, 144 F.3d 74 (D.C.Cir. 1998) (per curiam). This is not a rigid rule, and because prosecutors and defendants have unequal bargaining power the defense will indeed be favored on close questions, *see United States v. Gottesman*, 122 F.3d 150, 152 (2d Cir.1997); *United States v. Nyhuis*, 8 F.3d 731, 742 (11th Cir.1993); *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir.1986) (all discussing plea agreements).

■ An informal agreement for transactional immunity will not be found to exist simply because a defendant had some reason to think it might have been granted, however. A defendant's subjective belief that he has been given informal immunity must at least be objectively reasonable and must be corroborated in some way. "[A] good deal of weight must be placed on the contemporaneous interpretation of counsel" in interpreting an agreement, *United States v. Pollard*, 959 F.2d 1011, 1028 (D.C.Cir.1992), or in determining whether an agreement exists.

■ This record will not support a finding that Hubbell was given informal *transactional* immunity. It would require unacceptable distortion of Ewing's language and "stretch the bounds of reasonableness," *cf. United States v. McHan*, 101 F.3d 1027, 1035 (4th Cir.1996), to find that the OIC offered transactional immunity to defendant for statements he allegedly made even before the appointment of Independent Counsel on August 5, 1994, or for statements he had yet to make. Hubbell's claim of immunity for statements he made to the FDIC and RTC on March 16

and April 20, 1995, is somewhat more plausible: members of OIC staff were present on both occasions and arguably are covered by Ewing's reference to "various lawyers in the Independent Counsel's Office and agents...." But Hubbell's claim to a subjective belief that he was given transactional immunity even for those statements is completely uncorroborated. Ewing's prologue sits alone in the transcript, without any specific mention of immunity and without any further discussion of the subject, even though the prospect of a "clean slate" should have been intensely interesting to a man of Hubbell's education and broad legal experience, giving rise at least to some clarifying discussion. *Cf. United States v. Friedrick*, 842 F.2d 382, 391 (D.C.Cir.1988). It is particularly noteworthy that Hubbell did not object, or raise a question, or even mention transactional immunity, after his counsel was given a "target letter" on April 30, 1998.

My finding that there was no grant of transactional immunity does not finish the conversation about Ewing's undertaking to Hubbell on December 19, 1995. I have already ruled that Hubbell's grand jury testimony given on that day will not be received in evidence.[3] If and to the extent the OIC seeks to use any statement given by Hubbell to OIC as proof of the falsity of any element of the government's case, a determination will have to be made as to whether informal use immunity was conferred upon that statement.

### Motion for a bill of particulars

The motion for a bill of particulars will be denied because, after the dismissal of Count 1, the rest of the charges are "stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same

**3.** OIC seeks assurance that the effect of this ruling is to suppress the testimony rather than find it covered by a grant of pocket immunity, so that the (concededly truthful) testimony

charges." *United States v. Butler*, 822 F.2d 1191, 1193 (D.C.Cir.1987).

given on December 19, 1995, could be used at trial should Hubbell somehow open the door to it. Assurance granted.